GEORGE HILL, Respondent, v. THE DURHAM HOUSE DRAINAGE COMPANY of New York and Another, Appellants.

*Privileged communications — absolute and prima facie privileged — action to recover damages for libel — malice.*

There are two classes of privileged communications — those which are absolutely privileged and for the publication of which an action cannot be maintained, no matter what the motive of the author may be, and those which are *prima facie* privileged, which are of two kinds, those which relate to matters of public interest, and those which relate to merely private interests.

In case a communication is *prima facie* privileged, the existence or non-existence of malice on the part of the defendant is a question of fact, and the plaintiff, in an action brought to recover damages for the publication of an alleged libel, before he can recover, must affirmatively establish to the satisfaction of the jury that the publication complained of was made through malice.

There are two questions involved in the issue whether a communication is *prima facie* privileged, viz., was the occasion on which it was made privileged, and did the communication go beyond what the occasion justified, or did it exceed the privilege ?

APPEAL by the defendants, The Durham House Drainage Company of New York and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 10th day of May, 1893, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 3d day of May, 1893, denying the defendants' motion to set aside the verdict and for a new trial made upon the minutes.

This action was brought to recover damages for the publication of a letter alleged to be libelous. At the date of the publication complained of the plaintiff was, and during the fifteen years preceding had been, a civil engineer, and in 1891 he was employed by Carrere & Hastings, architects, having charge of the heating, ventilating and plumbing of buildings which were being erected under their plans and specifications. In 1891 the *Mail and Express* building was being constructed by Charles T. Wills, as contractor, who sublet the plumbing to James Armstrong. Carrere & Hastings were the architects in charge of the building, and the plaintiff, under them, had personal charge of the work until shortly after June 20, 1891, when he was withdrawn from that building. The *Mail and Express* building was constructed, including plumbing, pursuant to plans and specifications which had been inspected by builders and plumbers, who bid for the work, which had been let sometime prior to June 20, 1891, on which date the defendants wrote and sent the following letter to R. C. Alexander, who had charge of the work for the owners:

" Cable Address: ' Irisknack.'

"THE DURHAM HOUSE DRAINAGE COMPANY OF NEW YORK,
"158–160 WEST 27TH STREET.

"Trade mark — D. H. D. Co.

"NEW YORK, *June* 20, 1891.

"R. C. ALEXANDER, Esq.,
"*Secretary ' Mail and Express' Co.:*

"DEAR SIR — We beg to submit the following statement:

"In the spring of 1890 we called the attention of Messrs. Carrere & Hastings, architects, to the superiority of our drainage work, and as a result of the favorable opinion formed by their engineer, Mr. Geo. Hill, the 'Durham System' of house drainage was speci-

fied to be used in the Pierce building at the N. W. corner of Franklin and Hudson streets; and later the plumbing specification of the 'Mail & Express' building also was drawn to include in its entirety our wrought-iron pipe drainage.

"The contract for the Pierce building, including plumbing, was awarded to Mr. Willis, who sublet the plumbing to one James Armstrong, who for several years has made a practice of imitating our system as closely as he dared without risking the consequences of infringement.

"When we learned that Armstrong had been selected to do the plumbing we promptly notified Mr. Hill that he (Armstrong) would probably not apply to us to furnish the drainage system as specified, but attempt to furnish his own imitation instead; and Mr. Hill promised to notify Mr. Willis to suspend his selection of Armstrong as plumber until the matter could be investigated.

"When the Pierce building was about ready for, the plumbing work, not having been able to secure satisfactory action from Mr. Hill, our attorneys, Messrs. Cannon & Attwater, notified Messrs. Carrere & Hastings that if Armstrong attempted to construct the drainage work as specified, their client (the owner of the building) would be liable for damages for infringement. They replied that they had changed the specifications, and should allow Mr. Armstrong to proceed.

"We are now informed that Mr. Willis is the contractor for the 'Mail & Express' building, and that he has selected Armstrong to do the plumbing. Under the circumstances, we should be derelict in our obligations to the other bidders if we failed to appeal to Col. Shepard to forbid any similar change in the published specifications for the purpose of favoring the contractor, and to veto the selection of Armstrong as plumber unless he should agree to furnish the work called for by the specifications.

"The following builders and plumbers applied to us for our price for constructing the drainage system as specified, viz.: Richard Deeves, builder; Byrn & Tucker, plumbers; John Toumey & Son, plumbers; J. N. Knight &. Son, plumbers; W. R. Bracken, plumber; Cook & McCormack, plumbers.

"Mr. Armstrong did not ask us for a quotation. It is, therefore,

evident that he made his price with the understanding that he would not be required to adhere to the specifications, and that the Pierce building precedent would be followed in this case.   On this basis he could quote his patron a much lower price than could the first-class firms above named, who accepted the specifications literally, and the builders using their bids were correspondingly handicapped.

" Any departure from the intent of the drainage specification will be at the owner's cost.   Mr. Hill may have good reasons for changing his mind and preferring a botched and scamped piece of work to that which he described in his specifications, but he has selected an unfortunate time to declare the change ; and in that opinion he will stand alone as an engineer.   Among contractors his action could only be construed very unfavorably.

" We beg to assure you that this protest is not dictated from any sense of loss, but from indignation that we should be made use of as a club with which to knock out honest bidders.   And we trust that this appeal will have the effect of preventing the consummation of a purpose, which it is amazing should be contemplated by any person valuing his reputation.

                    " Very respectfully,

                              " DURHAM HOUSE DRAINAGE CO.,

                                        " By C. W. DURHAM,

                                                  " *President.*"

At the date of this letter the Durham House Drainage Company was, and for some time had been, a domestic corporation, of which Caleb W. Durham was president.

The defendants, by their answer, admitted the publication of the letter, and alleged that it was not composed or published maliciously, but, in the course of the business of the defendant corporation, to prevent its business from being injured by the substitution of inferior work for its work, which was called for by the specifications for the *Mail and Express* building.   These matters were alleged as a defense and in mitigation of damages.   Upon the trial of the issues so joined, the plaintiff had a verdict for $2,500, on which a judgment was entered.

*A. B. Cruikshank*, for the appellants.

*David McClure*, for the respondent.

FOLLETT, J.:

The defense interposed by the answer is that the statements contained in the letter are true, were published without malice, and that the circumstances under which the letter was written rendered it a *prima facie* privileged communication. There are two classes of privileged communications: (1) Those which are absolutely privileged, and for the publication of which an action cannot be maintained, no matter what the motive of the author may be. Within this class are accurate publications of the proceedings of courts of record and legislative bodies, the statements of judges, witnesses and jurors made on trials in courts of record. (2) Communications which are *prima facie* privileged. Among this class are statements necessary to protect one's private interests, and statements of one having an interest in the subject-matter of the communication made to another having an interest in the same matter. *Prima facie* privileged communications are subdivided into two kinds: (1) Those which relate to matters of public interest, and (2) those which relate to purely private interests. The communication in this case, if it be *prima facie* privileged, falls within the second subdivision of the second class.

In case a communication is *prima facie* privileged, the existence or non-existence of malice on the part of the defendant is a question of fact, and the plaintiff, before he can recover, must affirmatively establish, to the satisfaction of the jury, that the publication complained of was made through malice. This may be shown by the communication, by the circumstances under which it was written, and it may be inferred from a variety of facts. There are two questions involved in the issue, whether a communication is *prima facie* privileged: One is, was the occasion on which it was made privileged? (2) Did the communication go beyond what the occasion justified, or did it exceed the privilege?

The communication complained of related to the introduction of a system of drainage and plumbing for two buildings, the specifications for the construction of which called for the use of the defendant's system. In both cases other systems of drainage had been substituted to the defendant's loss. The communication was made to the secretary of the *Mail and Express* Company, which was engaged in erecting one of the buildings. The occasion was privi-

leged.   Did the publication go beyond the occasion, or, in other words, was more written than the occasion, the facts, justified? This depended upon the terms of the communication and the facts outside of it, and was an issue of fact for the jury.   However, the case was not submitted to the jury on that theory, but, on the contrary, the court charged: "This letter related to Mr. Hill, the plaintiff, in his business capacity, and I charge you that the words therein contained are libelous *per se*, and that he is entitled to maintain this action, and, being entitled to maintain the action, the next question which arises is as to the damages which he has sustained."   To this instruction the defendants excepted.   In this the court erred, for under defendant's evidence tending in support of the letter it could not be affirmed, as a matter of law, that the question was not privileged and that the communication exceeded the privilege.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

O'BRIEN and PARKER, JJ., concurred.

Judgment reversed, new trial granted, costs to appellant to abide event.