Ralph W. Ashcroft, Respondent, *v.* John H. Hammond, Appellant.

**Libel**— privileged communications — when communication is presumptively privileged, plaintiff must show falsity thereof, and that it was actuated by malice — evidence — when questions are for the jury — when for the court.

A written communication between private persons concerning their own affairs is *prima facie* privileged. And though all that is said is under mistake, yet the words are not for that reason alone actionable. Where both the party making and the party receiving the communication have an interest in it, it is privileged.

When a communication is presumptively privileged, to render it actionable it is incumbent on the plaintiff to prove that it was false and that the defendant was actuated by express malice or actual ill-will. Those questions are for the jury, only when there is evidence in the case warranting their submission, and in such case the burden of proof is on the plaintiff.

Defendant in reply to a telegram from a person interested like himself in the proper management of a corporation, and the settlement of a controversy which had arisen as to the validity of the election of a board of directors, sent a' telegram reflecting upon the competency of plaintiff, who had formerly been manager of the corporation and was then actively engaged in the controversy. *Held*, upon review of the record, that it is destitute of any facts or evidence which would justify an inference of malice on the part of the defendant or destroy the privilege to which his communication was *prima facie* entitled.

*Ashcroft* v. *Hammond*, 132 App. Div. 3, reversed.

(Argued January 27, 1910; decided February 15, 1910.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered April 23, 1909, which reversed a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*James Byrne, A. L. Humes* and *Elihu Root, Jr.,* for appellant. Whether the alleged libel is a privileged communication or not is a question for the court. (*Lovell Co.* v. *Houghton,* 116 N. Y. 520; Odgers on Libel & Slander [4th ed.], 217.) The telegram upon which plaintiff's case was based is a privileged communication, and the Appellate Division erred in holding that an occasion of privilege was not shown. (*Klinck* v. *Colby,* 46 N. Y. 427; *Edmondson* v. *Bush,* 1 K. B. 371; *Broughton* v. *McGrew,* 39 Fed. Rep. 672; *Scullin* v. *Harper,* 78 Fed. Rep. 460; *Walker* v. *Best,* 107 App. Div. 304; Odgers on Libel & Slander [4th ed.], 264.) A privileged communication is presumed to have been made in good faith, and to overcome the presumption the plaintiff must offer proof of express malice. The mere falsity of the alleged libelous language is not such proof. (*Hemmens* v. *Nelson,* 138 N. Y. 517; *Haft* v. *F. Nat. Bank,* 19 App. Div. 423; *Decker* v. *Gaylord,* 35 Hun, 584; *Lewis* v. *Chapman,* 16 N. Y. 369; *Lovell Co.* v. *Houghton,* 116 N. Y. 520.) The Appellate Division erred in holding that there was any evidence of actual malice tending to defeat the defense of privilege. (*Fowles* v. *Bowen,* 30 N. Y. 20; *Shotwell* v. *Dixon,* 163 N. Y. 43; *Somerville* v. *Hawkins,* 10 C. B. 583; *McCarty* v. *Lambley,* 20 App. Div. 264; *Haft* v. *F. Nat. Bank,* 19 App. Div. 423.) The defendant committed no wrong by sending his message by telegraph instead of mail. (*Broughton* v. *McGrew,* 39 Fed. Rep. 672; *Klinck* v. *Colby,* 46 N. Y. 427; *Lawless* v. *A. E., etc., Co.,* L. R. [4 Q. B.] 262; *Caldwell* v. *Storey,* 107 Ky. 10; *Boxius* v. *Goblet,* L. R. [1 Q. B. 1894] 842; *Edmundson* v. *Birch,* L. R. [1 K. B. 1907] 371.)

*R. A. Mansfield Hobbs* for respondent. The statements contained in the telegram sent by the defendant in reference to the plaintiff were not privileged. (18 Am. & Eng. Ency. of Law, 1023; *Atwater* v. *M. N. Co.,* 67 Conn. 504; Odgers on Libel & Slander, 220; *McIntyre* v. *Weinert,* 195 Penn. St. 52; *Lewis* v. *Chapman,* 16 N. Y. 370; *Sarahson* v. *W. Assn.,*

44 App. Div. 302; *Payne* v. *Rouss*, 46 App. Div. 315; *Klinck* v. *Colby*, 46 N. Y. 427; *Sickles* v. *Kling*, 60 App. Div. 519; *Rose* v. *I. E. Co.*, 110 App. Div. 437; *Sheftall* v. *C. G. R. R. Co.*, 123 Ga. 589; *Briggs* v. *Brown*, 46 So. Rep. 325.) The libelous statements complained of, having been communicated by means of a telegram, is sufficient publication to destroy the privilege if such had ever existed. (*Munson* v. *Lathrop*, 96 Wis. 386; *Williamson* v. *Freer*, L. R. [9 C. P.] 393; *People* v. *Webb*, 5 N. Y. Supp. 855; Newell on Slander & Libel, 233; *Peterson* v. *W. U. T. Co.*, 69 Minn. 18; 72 Minn. 41; 75 Minn. 368; *Whitfield* v. *S. E. R. R. Co.*, 27 L. J. Q. B. 229; *Gambrill* v. *Schooley*, 93 Md. 48; *Pullman* v. *Hill*, L. R. [1 Q. B.] 524; *Rumney* v. *Worthley*, 186 Mass. 144; *Youmans* v. *Smith*, 153 N. Y. 214.) The questions of malice, good faith, a *bona fide* belief in the truth, or a wanton and reckless disregard of plaintiff's rights involved in this case, made it imperative that the case should have been submitted to the jury. (*McDonald* v. *M. S. Ry. Co.*, 167 N. Y. 66; *Sharp* v. *E. R. R. Co.*, 184 N. Y. 100; *Atwater* v. *M. N. Co.*, 67 Conn. 504; *Klinck* v. *Colby*, 46 N. Y. 427; *Mattice* v. *Wilcox*, 147 N. Y. 624; *Lewis* v. *Chapman*, 16 N. Y. 369; *Payne* v. *Rouss*, 46 App. Div. 315; *Sullivan* v. *S. II. E. C. Co.*, 47 L. R. A. 859; *Ronkle* v. *Haven*, 103 N. W. Rep. 850; *Abraham* v. *Baldwin*, 52 Fla. 151.)

CULLEN, Ch. J. The action is for libel. The publication complained of is a telegram sent from the defendant to Samuel L. Clemens in negotiations to settle a controversy that had arisen over the affairs of the Plasmon Company. Plasmon is a product of milk obtained by processes protected by patents. The parent company was an English corporation. The Plasmon Company of America was capitalized at 7,500 shares of stock at the par value of one hundred dollars. The English company held 2,500 shares issued in consideration of the patent rights for this country transferred to the American company; the defendant, 1,250 shares; his wife,

229 shares; ·Clemens, 400 shares, and the plaintiff 10 shares, besides whom there were other stockholders. The rights obtained from the English company were first held by what is termed the Plasmon Syndicate, the members of which, in the spring of 1902, formed the Plasmon Company. The company and its predecessor, the syndicate, seem to have been unfortunate from the beginning. The first manager, a Dr. Cook, left the syndicate in December, 1901, under charges of dishonesty. He was succeeded by one Wright, who became general manager of the company on its incorporation. The plaintiff became assistant manager in June, 1902; secretary and treasurer in December, 1902; manager in May, 1903; auditor, March, 1904, and manager again in June, 1904. In May, 1903, Wright left the service of the company also under charges of dishonesty and of fraudulent issue of stock. In August, 1904, the company became practically insolvent. To aid it, the defendant loaned it the sum of $10,000, to be repaid in thirty days, and took as security therefor a mortgage on all its property and assets. The mortgage was not authorized or ratified by the stockholders. The condition of the company did not improve. As is usual, lack of success bred dissension. The English company, the largest stockholder in the American company, protested against the mortgage. The defendant proposed a plan to reorganize the company and put in additional capital. That plan did not meet the approval of the other stockholders and the controversy became acute. Finally, at a stockholders' meeting, on September 1st, 1904, a new board of directors was elected. One Wheeler, who had previously been vice-president of the company and represented the defendant's interest therein, refused to recognize the election as legal because a majority of the stock was not voted thereat. He sought to retain possession of the offices of the company. Litigation followed both in the state and federal courts, where the validity of the election was upheld. The plaintiff was elected general manager by the new board and immediately thereafter sent these telegrams to the defendant and his secretary :

" NEW YORK, *Sept.* 1*st*, 1904, VIA GLOU-
      " CESTER, Ms., *Sept.* 1*st.*

" JOHN HAYS HAMMOND :

    " Care Eastern Yacht Club Stn, Bar Harbor, Me.

" At to-day's adjourned annual meeting of Plasmon Company an entirely new board was elected and Wheeler was thereby put out of office ; we desire to repay your loan immediately. Please wire Truslow at once accordingly.

          " PLASMON CO. OF AMERICA.

            " R. W. ASHCROFT, *Manager.*"

        " NEW YORK, N. Y., *Sept.* 1*st*, 1904.

      " VIA GLOUCESTER, MASS., *Sept.* 1*st*, 1904.

" JOHN HAYS HAMMOND,

    " Care Eastern Yacht Club, stn, Bar Harbor, Me.

" Strongly advise you to instruct Wheeler not to resist the new Plasmon Board, otherwise you will antagonize interests whose hostility you and your Guggenheim associates can least of all afford to incur. Will explain to Campbell to-morrow.

            " R. W. ASHCROFT."

" JAMES DOUGLAS CAMPBELL,

    " C / o John Hays Hammond,

       " 71 Broadway, City of New York.

" Not hearing from Hammond I wish to inform you, his private secretary, that unless Wheeler immediately quits his arbitrary and illegal acts regarding Plasmon matter, Hammond and his Guggenheim associates will incur the active hostility of people whose antagonism would result in great financial loss to Guggenheim. I, therefore, strongly urge you to get into touch with Hammond at once and induce him to order Wheeler to quit fighting over a dry bone. I will pay Hammond loan Tuesday.

          " R. W. ASHCROFT."

Mr. Clemens in the controversy sided with Ashcroft, who testified he was Clemens' representative. Conferences took place between Mr. Clemens and the defendant, but without result. On September 15th, the plaintiff and Mr. Clemens

called at the defendant's hotel for further conference, but found him out of town. Thereupon the following telegram was sent:

"NEW YORK, *Sept.* 15, 1904.

" JOHN HAYS HAMMOND:

" Broughton suggests Truslow should act as your attorney and proxy in Plasmon matter. We cannot accept Davis, or any one else, as permanent manager, but will guarantee to protect your 22% interest on terms stipulated by you. Papers covering Truslow's appointment mailed you special delivery to-night. Please return them to me at Hotel Walcott. Please wire Wheeler instructing him to vacate Plasmon offices forthwith; withdraw his policemen, recognize new board and release bank account. Also wire Truslow to relinquish deed of trust and other documents on payment of your loan by us. Telegraph reply Hotel Walcott.

"S. L. CLEMENS."

To this the defendant answered on the same day:

"GLOUCESTER, MASS., *Sept.* 15, 1904.

" S. L. CLEMENS,

" Hotel Walcott, New York.

"I shall strongly oppose turning over Company to Ashcroft's board of directors. He has been identified with the rotten administration of Cook and Wright, and is incompetent or worse. Unless Davis accepts management and my stipulation that Ashcroft should not be employed by company, I shall retain Wheeler for the present. You have been imposed upon by Ashcroft and others regarding Wheeler. Am going to St. Louis to-morrow to be absent ten days. On my return I will discuss matters further with you and others interested. Meanwhile will extend date payment my notes.

" JOHN HAYS HAMMOND."

It is this telegram that the plaintiff charged to be libelous. The trial court held the communication privileged and dismissed the complaint. The Appellate Division reversed the

judgment on that decision and ordered a new trial, from which the defendant has appealed to this court.

That presumptively the defendant's telegram was privileged is entirely clear, and the question was one for determination by the court as the circumstances were not in dispute. (*Lovell Co.* v. *Houghton*, 116 N. Y. 520.) The definition of a privileged communication given by Judge Folger in *Klinck* v. *Colby* (46 N. Y. 427) and reiterated in all the decisions on the subject since is : " When a communication is fairly made by a person in the discharge of some private or public duty, legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." The learned judge further said : " A written communication between private persons concerning their own affairs is *prima facie* privileged. And though all that is said is under mistake, yet the words are not for that reason alone, actionable. Where both the party making and the party receiving the communication, have an interest in it, it has never been doubted that it was privileged." (p. 433.) The same judge said in *Hamilton* v. *Eno* (81 N. Y. 116) : " The occasion that makes a communication privileged is when one has an interest in a matter, or a duty in regard to it, or there is a propriety in utterance, and he makes a statement in good faith to another who has a like interest or duty, or to whom a like propriety attaches to hear the utterance." (p. 124.) Both the defendant and Mr. Clemens were vitally interested in the proper management of the company and in the settlement of the controversy that had arisen as to the validity of the election of the new board of directors. They were its largest individual stockholders and their interests were identical, that is to say, they were equally interested in the success of the company, but they were in controversy as to what course would best subserve their common interest. Each had the right to endeavor to convert the other to his own view and for that purpose to state such facts relative to the subject as he believed to be true. It is urged by the respondent that as neither Mr. Clemens nor the defendant was a director of the company, but merely a stockholder,

the management of its affairs was not subject to their control and there was no occasion for the defendant imparting any information concerning the plaintiff. This contention is without force. All parties understood that while neither Clemens nor Hammond was a director, they represented the two warring factions, and the rival boards of directors were under their respective controls. Otherwise, why the negotiations and conferences between Mr. Clemens and the defendant and why did the plaintiff act as Mr. Clemens' adviser therein?

It is also urged that the privilege which might protect a written or oral communication from the defendant to Mr. Clemens did not extend to a telegraphic message, necessarily read by the operators. The learned judge who wrote for the court below did not accede to this claim. He held that the sending of the communication by telegraph was not such a disclosure to others as destroyed the privilege, since it was an ordinary means of business communication. It is unnecessary to determine the general question. It is sufficient to say that the plaintiff could not complain of the method of communication adopted. The dispatch from Clemens asked for an answer by telegraph, and the plaintiff wrote that dispatch and sent it. He says he wrote it merely as an amanuensis, at Mr. Clemens' dictation, but it is clear he was at the same time Mr. Clemens' adviser and, at least, he acquiesced in the contents of the telegram. He, therefore, consented that any communication which was fairly germane or responsive to the Clemens telegram should be sent by telegraph.

The defendant's telegram thus being presumptively privileged, to render it actionable it was incumbent on the plaintiff to prove that it was false and that the defendant was actuated by express malice or actual ill-will. While there are numerous cases in the books in which it is said that as to privileged communications the good faith of the defendant and the existence of actual malice are questions of fact for the jury, the expression must not be misunderstood. Those questions are for the jury only when there is evidence in the case warrant-

ing their submission to the jury and the burden of proof is on the plaintiff. (*Lovell Co.* v. *Houghton*, 116 N. Y. 520; *Hemmens* v. *Nelson*, 138 N. Y. 517.) Nor is evidence of mere falsity of the charge sufficient. (*Lewis* v. *Chapman*, 16 N. Y. 369.) It is true that a communication may be so extravagant in its denunciations or so vituperative in its character as to justify an inference of malice. The defendant's telegram is subject to no criticism of that character. It is temperate and moderate in its tone. It cast no aspersion on the character or ability of the plaintiff, except so far as related to the exact business in hand. Doubtless also the plaintiff might establish malice by proving that the defendant knew the falsity of the statements made by him. The only statements in the telegram which the complaint alleges to have been false are that the plaintiff was "incompetent or worse," and that he had imposed on Clemens as to Wheeler. On this appeal he also complains of the statement that he was identified with the "rotten" administration of Cook and Wright. That the administration of those persons was properly characterized as "rotten" is testified to by Mr. Clemens, and is not gainsaid. It is true that the plaintiff was not in the employ of the company until the accession of Wright, after Cook had absconded. But that the plaintiff was identified to some extent with Wright's administration is unquestionable. How close this intimacy was is shown by a letter written by him, concerning the affairs of the company, to a third party during Wright's administration: "Sooner than have any scrap with Wright, I would rather step down and out. I am his nominee, and it was solely on the strength of his personality that I identified myself with Plasmon. He is a gentleman and is playing a 'gentleman's game,' and although may be he has taken a card from the bottom of the pack, I certainly won't accuse him of having done it with dishonest intentions." This seems to justify a belief in the plaintiff's identification with Wright's administration, even to the exhibition of a rather lax morality. The plaintiff testifies that at the time of submitting a proposed contract between

1910.]   Ashcroft *v*. Hammond.   **497**

N. Y. Rep.]  Opinion of the Court, per Cullen, Ch. J.

the English Plasmon company and the American one to the defendant he had discovered that Wheeler had a secret arrangement with the English company by which he was to be paid a part of the money going from the American company to the English company. Yet, he failed to disclose that fact to the defendant. The plaintiff in his telegrams endeavored to intimidate the defendant by threats of the animosity of powerful financial interests having no connection with the company. To the competency of the plaintiff even Mr. Clemens declined to commit himself. In answer to the question whether the plaintiff was competent he testified : " I cannot say." For a considerable part of the time that elapsed between the departure of Wright and the final controversy in 1904 the plaintiff acted as manager of the company, and during this period its affairs seem to have gone from bad to worse. It is true that Wheeler was his superior, and it may be that want of success was despite the plaintiff's competency and not by reason of his incompetency, still it was entirely natural that under the circumstances the defendant might have honestly entertained the view that he was incompetent, and the burden was on the plaintiff to show that the defendant did not believe the statement he made in the telegram.

Nor is there any evidence in the record of extraneous matters that would justify an inference that the defendant had any dishonest or selfish intention in his conduct towards the company. So far as attempting to "freeze out" the stockholders, to use an expressive colloquialism, the evidence is to the contrary. He twice helped the company by advancing money when nobody else could be found to do the same, once by taking new stock when others declined and regarded it as worthless ; the second time by lending it $10,000. The suggestion that his conduct as to this loan was fraudulent because the mortgage was invalid by reason of failure of the stockholders to consent thereto is preposterous. A suspicious man might possibly attribute fraud to a borrower who gave his creditor invalid security, but how there could be any element of fraud on the part of a creditor because the security given

him was bad it is difficult to discern. The fact is, however, as testified by the plaintiff himself, that all parties at the time, being ignorant of the law, regarded the mortgage as valid. In concluding our review of the record we may say that we find it destitute of any facts or evidence which would justify an inference of malice on the part of the defendant or destroy the privilege to which his communication was *prima facie* entitled.

It was held by the Appellate Division that no case of privilege was shown because the telegram was sent by the defendant in furtherance of the attempt to keep out the new board and continue the old board, a controversy subsequently determined by the court adversely to the defendant's claim. It was also said that on a new trial the defendant might establish the illegality of the election of the new board, whereupon an occasion of privilege would appear. From this view we dissent. The question of privilege did not depend on the legality or illegality of the new election, but on the defendant's good faith. (*Lovell Co.* v. *Houghton, supra.*) The fact that the defendant was defeated in a lawsuit by no means established bad faith, and it must be borne in mind that it was in negotiations for the settlement of that very lawsuit that the alleged libel was published.

The order of the Appellate Division should be reversed and the judgment of the Trial Term affirmed, with costs in both courts.

GRAY, HAIGHT, WERNER, HISCOCK and CHASE, JJ., concur; WILLARD BARTLETT, J., absent.

Order reversed, etc.