JOHN FOWLER, Respondent, v. THE NEW YORK HERALD
COMPANY, Appellant.

First Department, November 8, 1918.

Libel — qualified privilege of publisher to defend itself and also
one for whom it has stood as sponsor from unjust attacks —
malice — instructions to jury — provocation for writing article.

A newspaper company which, through advertisements and otherwise, has
stood sponsor for the representative of a foreign country has, upon said
representative being denounced by the United States Consul General
stationed in said foreign country but who was at the time on leave, a
qualified privilege to publish articles not only in defense of itself but also
in defense of said representative from alleged unjust attacks and false
charges by said Consul.

In an action by the Consul against said publisher for libel the question
whether the defendant in its publication went beyond its legal privilege
and should be charged with malice was one of fact for the jury, both in
determining defendant's liability and also in determining the amount of
punitive damages which should be awarded in case liability be found.

It was error to charge the jury that said representative had nothing what-
ever to do with the case and that the attitude of the plaintiff towards him
was no provocation for the writing of the article.

APPEAL by the defendant, The New York Herald Company,
from a judgment of the Supreme Court in favor of the plain-
tiff, entered in the office of the clerk of the county of New
York on the 2d day of March, 1917, upon the verdict of a jury
for $15,000, and also from an order entered in said clerk's
office on the 21st day of February, 1917, denying defendant's
motion for a new trial made upon the minutes.

*Robert W. Candler* of counsel [*John H. Bogardus* with him
on the brief; *Jay & Candler*, attorneys], for the appellant.

*Emil E. Fuchs* of counsel [*George Cohen* with him on the
brief; *George Hiram Mann*, attorney], for the respondent.

SMITH, J.:

This action is brought to recover damages for an alleged
libel printed of the plaintiff upon the 18th and 19th days
of October, 1908. At that time the plaintiff was United

States Consul General, at Chefoo, China, and was in America on leave by reason of certain physical infirmities from which he was suffering.

Upon October 15, 1908, Li Sum Ling, a Chinaman, was in Boston and was about to make a speech before the Chamber of Commerce. He was quite extensively advertised as a Chinese editor who was interested in the furtherance of trade relations between the United States and China. He had had an interview with Secretary Root. He was the editor of the *Chinese Mail* and of another paper in China, and the defendant had interested itself quite extensively in advertising him in this country and in procuring appointments for him to appear conspicuously in different cities.

Upon this fifteenth day of October, while this Chinaman was at the Hotel Touraine and was lunching with two of the representatives of defendant's paper, the plaintiff sent to him a red card upon which were some Chinese characters which, when spoken, partly resembled in sound the plaintiff's name. He was shown up to the Chinaman's apartment. He was almost blind so that he had to feel his way along the walls and he was very deaf so that he could hear nothing and it was necessary to write a question that was asked of him. I will not describe in detail this interview between the plaintiff and the Chinaman. The plaintiff's actions were, at least, very peculiar, especially to those who did not know who he was or what was the purport of his business. He took occasion to insult the Chinaman and told him that he was sorry that he had called. He went out from that interview and told the hotel manager that he must watch out for that man, referring to the Chinaman. He sought one of the editors of the Boston *Journal* and denounced the Chinaman as an imposter and a fake. This interview with the editor of the Boston *Journal* was upon the next day published in the Boston *Journal*, but, within a few days thereafter, was withdrawn as published through a mistake, the credentials of the Chinaman being acknowledged to have been valid. Thereafter and upon the same afternoon one of the representatives of the defendant, together with a representative of a Boston paper, had an interview with the plaintiff at his

home in Winchester, but this interview was not satisfactory because of the difficulty in asking questions of the plaintiff.

Upon the eighteenth of October this defendant gave an account of this interview, and the article giving this account is one of the articles of which complaint is made. Upon the nineteenth of October another article was published under the heading: " State Department may ask Mr. Fowler for explanation. Conduct of Consul who gave affront to Mr. Li Sum Ling in Boston cannot be explained by officials in Washington. Believe physical condition is to blame." This was the second article, and made a ground of plaintiff's complaint. The defendant's answer consists of a denial of the publication as alleged and pleaded certain facts in mitigation of damages.

At the close of the charge the plaintiff's counsel made this request: " I ask your Honor to charge that Mr. Li has nothing to do with this case whatsoever; and that it was no provocation for the defendant to write an article against this plaintiff because of the attitude that he took against Mr. Li." " The Court: I so charge." Defendant's counsel: " I except."

In the amended complaint it is alleged on information and belief: " That on or about the 15th day of October, 1908, and for some time prior thereto, and for some time subsequent thereto, one Li Sum Ling, a Chinaman, was visiting in and travelling through certain cities in certain States of the United States of America, under the supervision, guidance and patronage of the defendant herein and receiving remuneration therefor from said defendant and one James Gordon Bennett, a man largely interested in the direction, control and publication of the said, The New York *Herald.*"

In the amended answer these allegations were not denied and the defendant alleged: " That the said defendant herein had been for a long time prior to the said 15th day of October, 1908, likewise interested in the said educational matters and trade relations and had advocated a closer alliance between the United States of America and the Empire of China and was interested in the investigations made by the said Li Sum Ling, and in the publication of his views of the conditions and relations as he found them to exist, and from time to time published numerous articles in respect thereto and in respect to the said Li Sum Ling."

The evidence discloses that not only was the defendant interested in this question which was being presented in this country by the Chinaman, and not only had it published various articles about this man, but that the defendant had taken an active interest in advertising his views and of obtaining opportunities for the said Li Sum Ling to present his views in public places to an extent, therefore, that the defendant in part stood sponsor for him before the American public. When, therefore, he was denounced by the plaintiff publicly as an imposter, the defendant's natural course, not only in defense of the man for whom it had thus stood sponsor, but also in defense of itself, was to defend the Chinaman from unjust attacks and false charges, even if such defense called forth a revelation or explanation of the infirmities or peculiarities of the plaintiff. The defendant had a qualified privilege so to do. (Newell Sland. & Lib. [3d ed.] §§ 561 *et seq.;* Odgers Lib. & Sland. [5th ed.] 291 *et seq.; Ashcroft* v. *Hammond,* 197 N. Y. 488; *Hamilton* v. *Eno,* 81 id. 116; *Hill* v. *Durham House Drainage Co.,* 79 Hun, 335.) Whether the defendant in its publication went beyond its legal privilege and should be charged with malice was a question of fact for the jury, both in determining defendant's liability and also in determining the amount of punitive damages which should be awarded in case liability were found. It was not true, therefore, that this Chinaman had nothing whatever to do with this case, nor was it true that the attitude of the plaintiff towards the Chinaman was no provocation for the writing of the article.

There are other grounds upon which this judgment is challenged, upon some of which the justices of this court are not wholly in accord. It is not necessary to discuss them in this opinion, as they may not be presented upon another trial.

The judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, SHEARN and MERRELL, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.