LOUIS GUENTHER, Respondent, *v.* THE RIDGWAY COMPANY, Appellant.

First Department, May 5, 1919.

Libel — charge against a party personally and also against him in his occupation constitutes only one cause of action — right of person attacked in newspaper to reply — qualified privilege — when privilege question of law — malice — when time elapsing·between first attack and alleged reply material — evidence — hearsay.

Whether defamatory words are written of a man personally or of him in his occupation there is but one cause of action and that is for damages to the individual by means of the defamation.

The fact that words are alleged to have been published of a man in his occupation does not affect the capacity in which he sues. Hence, such an allegation added upon the amendment of a complaint does not constitute a new cause of action.

Where a person is attacked in a newspaper he has the right to reply and place his side of the controversy before the public. But where he does not attempt to defend himself from the charges made, but makes a counter attack in which libelous charges are made, not pertinent to the matters charged in the attack, the replying party has exceeded his privilege and it affords ·him no protection.

Whether a libel is privileged is a question for the court where the facts are practically undisputed.

Where the question of malice is pertinent the length of time elapsing between the publication of the first attack and the alleged reply is material.

In an action for libel *held* that a letter to the postal authorities and certain affidavits obtained by post office inspectors were properly excluded from the evidence, as the facts contained therein were hearsay, and that another letter to the postal authorities stating that the plaintiff and his father were being prosecuted for criminal libel was properly excluded as it was not shown to have been used in the investigation and as the fact of the arrest of the plaintiff and his father was proved by other evidence.

APPEAL by the defendant, The Ridgway Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 31st of May, 1918, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 23d day of May, 1918, denying defendant's motion for a new trial made upon the minutes, with notice of an intention to bring up for review an order entered in said clerk's office on the 21st day of March, 1918, denying defendant's motion for judgment on the pleadings.

*James B. Sheehan* of counsel [*Herbert Noble* and *Cecil L. Wahl* with him on the brief], for the appellant.

*E. C. Crowley* of counsel [*H. A. & C. E. Heydt,* attorneys], for the respondent.

PAGE, J.:

A judgment in favor of the plaintiff upon the first trial of this action was reversed because of certain errors in the admission of testimony and in the charge to the jury. (170 App. Div. 725.) These errors are not present in this record. After the decision of the former appeal the plaintiff, by leave of court, served a second amended complaint. The first amended complaint alleged the same libel and that the plaintiff was by occupation an editor and that the alleged libel was maliciously published by the defendant of and concerning the plaintiff with the defamatory intent and purpose of injuring the plaintiff in his business and occupation, and that defendant thereby injured the plaintiff in his business, occupation, reputation and name. The present complaint adds that plaintiff was such editor at the time of the publication, and that the alleged libel was published concerning the plaintiff in his said occupation. The defendant argues that the present

complaint states an entirely new cause of action, which having been incorporated in the pleading by amendment, more than two years after the cause of action accrued, no recovery could be had thereon. The defendant in support of its argument makes two erroneous assumptions: 1. That there are two distinct causes of action, (a) libel against a party personally; (b) libel against the party in his occupation. 2. That in these causes of action the plaintiff sues in a different capacity. Whether defamatory words are written of a man personally or of him in his occupation, there is but one cause of action, and that is for damages to the individual by means of the defamation. When we consider whether the words published are defamatory, it sometimes becomes material to consider whether they were simply published of the person or of him in his occupation, for the same words published of a man might not injure his personal reputation or standing, but if published of him in his occupation would result in serious injury, for which he would be entitled to substantial damages. Also words which if published of a man might injuriously affect him in his reputation, would much more injuriously affect him if published of him in his occupation. Therefore, even when the words are libelous *per se,* upon the question of damages, it becomes material whether the words were published of the man in his occupation. But as has been said: " In an action for libel, the fact that the words used had reference to the profession or business of the plaintiff is not the substantive ground of the action. The actionable quality of the words used does not, in any case, depend upon that consideration." (*Sanderson* v. *Caldwell,* 45 N. Y. 398, 405; *Moore* v. *Francis,* 121 id. 199.)

The fact that words were alleged to have been published of a man in his occupation does not affect the capacity in which he sues. He sues as an individual who has been damaged in his occupation. The learned justices at Trial and Special Terms were right in their rulings that no new cause of action was set up in the complaint and that the Statute of Limitations did not apply.

The defendant claims that the publication in this action was qualifiedly privileged, it having been published in the course of a newspaper warfare which had been commenced

by the plaintiff. It is well settled that where a person is attacked in a newspaper he has the right to reply, and put his side of the controversy before the public. In this article Rice did not attempt to defend himself from the charges made against him, but made a counter attack in which libelous charges were made against the plaintiff not pertinent to the matters charged in the attack. Where this is done the replying party has exceeded his privilege, and it affords him no protection. (*Collier* v. *Postum Cereal Co., Ltd.,* 149 App. Div. 143; on reargument, 150 id. 169, 178.) Whether the libel was privileged was a question for the court, as the facts are practically undisputed. Had the court found that the libel was in the nature of a reply, then the jury would have to determine whether there was actual malice in the publication, but the privilege having been exceeded, there was no question upon this issue to be left to the jury. (*Beardsley* v. *Maynard,* 4 Wend. 336.) If the question of malice was pertinent then the length of time elapsing between the publication of the first attack and the alleged reply would be material, for the law makes a concession to the infirmity of human nature, realizing that a quick retort in exasperation at a recent accusation is liable to be less temperate than a reply after deliberation and a lapse of time. Words spoken in the one case might not tend to show malice, while in the other they would show that they were spoken with a deliberate intention to injure.

In support of its plea of privilege the defendant relies on two recent cases, *Fowler* v. *N. Y. Herald Co.* (184 App. Div. 608) and *Andrews* v. *Gardiner* (224 N. Y. 440). In the first case the alleged libel was concededly a reply to the previous attack on a man for whom the defendant was sponsor, who had been denounced by the plaintiff as an impostor and a fake. This court held that the article was privileged and that the question of malice was for the jury. This was not a holding that any libel thereafter by the defendant of the plaintiff would be privileged, but merely that alleged libel was relevant and a proper reply to a previous attack and hence privileged. The case of *Andrews* v. *Gardiner* (*supra*) holds that most anything that a person may write in proceedings for executive clemency to a convict is relevant. "At such a time," says the court, "anything is pertinent that may move the mind

to doubt or the heart to charity. It is not necessary that reason be convinced; it is enough that compassion is stirred." (p. 447.) That case, it would seem, extends the qualified privilege beyond the bounds hitherto set and observed by the courts. Such is not the declared intention, that is to limit the claim of absolute privilege, for the court said: " We do not go beyond the case before us. Our ruling is in harmony with the tendency of courts to restrict the scope of absolute privilege in libel." (p. 448.) Thus limited, that case is not an authority in favor of the appellant in the instant case.

The appellant's counsel argues that the trial court erred in refusing to admit in evidence the charges made by the Chicago advertisers and the affidavits filed in connection therewith. The alleged libelous article stated: " The Eye Opener states further that Guenther was prosecuted by a number of Chicago advertisers and that twenty-three affidavits stating that Guenther had endeavored to ' hold up ' different companies for advertising were lodged with the authorities in Chicago. These affidavits, the Eye Opener says, stated that the amount of money demanded by Guenther in order to render the companies immune from the attacks in his publication ranged from $1,000 to $5,000 each."

Briefly stated the evidence offered was (1) a letter dated April 13, 1905, from the Union Security Company to the Third Assistant Postmaster-General in Washington complaining that the *Financial World* was being used as a club to force financial advertisers to place advertising through the Guenther-Bradford Advertising Agency. (2) A letter from the Nutriola Company dated April 8, 1905. (3) A letter dated April third, from Makeever Brothers to the Third Assistant Postmaster-General at Washington, to the effect that Louis Guenther and his father, Otto Guenther, were being prosecuted for criminal libel, inclosing newspaper clippings and requesting the Post Office Department to proceed against them. The first letter was properly excluded. The only proceeding which was instituted by any authority was an investigation by the Post Office officials, based on the second letter. The first letter was merely hearsay and had no probative value. The material portions of the second letter were admitted in evidence. The third letter was in no way shown to have been

used in the investigation and was properly excluded. The fact of the arrest of the plaintiff and his father on the complaint of criminal libel was proved by the introduction by the defendant of the complaint and warrant, and the disposition of the case was proved by exemplified copies thereof, from which it appeared that a *nolle prosequi* was entered in the Justice's Court as to the plaintiff and that his father was held for the action of the grand jury. There was, therefore, no error in the exclusion of these two letters.

There were eight affidavits obtained by the Post Office inspectors in the course of their investigation, which the defendant offered in evidence and the court excluded. This investigation was based on section 1617 of the postal regulations, and if it had been found that the regulations were violated a fraud order excluding the papers published by plaintiff from the mails would have been issued; the inspector in charge of the investigation testified that no fraud order was issued.

The appellant claims that these affidavits were admissible in evidence from four different viewpoints:

I. To prove that the matter published by it was wholly true. The affidavits, however, on the contrary did not establish the truth of a single statement of the article. It did not prove that Guenther was prosecuted by anybody. It did not prove that twenty-three affidavits had been lodged with the Chicago authorities. None of the eight affidavits stated that Louis Guenther had endeavored to hold up different companies for advertising, nor did any of them state that Louis Guenther had demanded money from any one. Such charges as were made in the affidavits were against the father and brother of Louis Guenther.

II. To prove that some part of the matter published was true. As stated above the affidavits did not prove any part of the matter was true.

III. To mitigate punitive damages in case the jury decided to punish the defendant. The verdict of the jury was " $5,000 compensatory damages."

IV. " To show that the character of the plaintiff was such as not to entitle him to any substantial amount as compensatory damages." The defendant's attorney stated several

times, in objecting to the admission of evidence, that the defendant did not attack the character and reputation of the plaintiff as a man nor as an editor, and he conceded that in both capacities his reputation was good. But waiving this the affidavits could not be received for that purpose; as to the facts stated in them they were hearsay and not admissible.

The judgment and order should be affirmed, with costs.

CLARKE, P. J., DOWLING, SMITH and SHEARN, JJ., concurred.

Judgment and order affirmed, with costs.