## THIRD DEPARTMENT, NOVEMBER, 1934.

ERMA FORSYTHE, an Infant, by RAY FORSYTHE, Her Guardian ad Litem, Respondent, *v.* HAROLD F. DURHAM, Appellant.

Judgment and order affirmed, with costs. Hill, P. J., Rhodes and Heffernan, JJ., concur; Crapser, J., dissents, with an opinion in which Bliss, J., concurs.

CRAPSER, J. (dissenting). This is an action to recover damages for the alleged slander of the infant plaintiff. The plaintiff was a student in the Spencer High School, Spencer, N. Y.; the defendant was the principal of the school. One of the teachers in the high school complained to the principal that the infant plaintiff when she got up to recite caused the other children to titter and that there was a rumor about the school that she was pregnant and a request was made to the defendant that something be done about it. A meeting of the board of education was called on May 6, 1932, at which meeting it was moved, seconded and carried that the principal inform the parents of Erma Forsythe to take her to a physician and see if she was in proper condition to attend school. In accordance with that resolution and on May tenth the principal wrote the father of the infant plaintiff as follows: " I have been instructed by the Board of Education to write you requesting that you remove your daughter Erma from school at once. After consideration of your daughter's case this action was felt necessary." Teachers were sworn and testified that previous to this occurrence that there was a rumor around the school that the infant plaintiff was pregnant. After receiving the letter on the twelfth day of May the plaintiff's parents with her younger sister drove down in their car to the Spencer High School and the daughter Gladys asked the defendant to come out to the car, which he did. The parents of the plaintiff say that they showed the defendant the letter and asked him what it was all about and he said Erma was pregnant and unfit for school, he said he got his information from the teachers who told him it was very embarrassing when Erma got up to recite in class. She asked him, " Do you realize how you have hurt Erma, Ray and I? " and he said, " It wasn't done to hurt Ray and you." The version of the defendant is somewhat different. The defendant says that after the teacher complained to him that he went to the board of education and stated to the board that there were rumors being circulated that the plaintiff was pregnant and asked what he should do about it regarding the school. The resolution above referred to was passed and the defendant wrote the letter. He testified that he had no intention whatever of injuring the reputation of the young lady in any way and that he was acting in good faith. His version of the conversation with the parents of the plaintiff was that they came to the schoolhouse and he went out to the car and that the mother spoke up and said, " We have got your dirty rotten letter. What does it mean? " and that he said, " It means, Mrs. Forsythe, about the rumor being circulated about your daughter," and the mother replied that she knew the girl who started the rumor and that she was a girl of very bad reputation. The defendant told her, " We have nothing to do with the rumor, but it has been cir-

culated at the school." The parents took the infant plaintiff to two doctors who examined her and found that she was not pregnant and was a virgin. The matter was submitted to the jury and the court charged that if the statements which the parents of the plaintiff testified to were made they were slanderous under the ordinary rule of law, that is, he charged that if the defendant charged the plaintiff with being pregnant it was slander, but he charged that they must find malice before they could render a verdict for the plaintiff, and he instructed the jury that they were to determine whether the statement was made maliciously or wantonly without good faith. (*Ashcroft* v. *Hammond*, 197 N. Y. 488.) Malice, however, does not mean alone personal ill will. It may also mean such a wanton and reckless disregard of the rights of another as is ill will's equivalent; this means more than mere negligence, than hasty or mistaken action. The kind of malice which would overcome and destroy the privilege in this case is of course quite distinct from that which the law, in the first instance, imputes with respect to every defamatory charge, irrespective of motive. It has been defined to be an indirect and wicked motive which induces the defendant to defame the plaintiff. Unless we can find in the record in this case some proof which would warrant the jury in finding the existence of such wicked motive on the part of the defendant when he made the charge in question, then the complaint should have been dismissed. The plaintiff herself testified that the principal had always been kind and considerate of her. From the entire record it is impossible to find any proof of malice. The exhibit that was offered to the court containing the salacious matter has an important bearing upon this case. It was not denied by the plaintiff. It may be that the defendant might have been more discreet and acted in a different way, but that in itself is not enough to sustain the judgment. The burden is upon the plaintiff. The privilege protects him from liability on that ground until the plaintiff has overcome the assumption of good faith by proof of a malicious purpose to defame her character. The plaintiff must be able to point to some evidence in the record that would warrant the jury in imputing a wicked motive to the defendant before she can succeed. The record discloses no such motive whatever on the part of the defendant. (*Hemmens* v. *Nelson*, 138 N. Y. 517, 524; *Pecue* v. *West*, 233 id. 316; *Ashcroft* v. *Hammond*, 197 id. 488.) The judgment should be reversed and the complaint dismissed. Bliss, J., concurs.