**Fred W. PHIFER, Appellant
(Plaintiff below),**

v.

**M. R. FOE and A. Edward Kendig,
Appellees (Defendants below).**

**No. 3667.**

Supreme Court of Wyoming.

Aug. 2, 1968.

———◆———

C. N. Bloomfield, Jr., of Ferrall & Bloomfield, Cheyenne, for appellant.

John J. Rooney, of Rooney & Horiskey, Teno Roncalio, of Roncalio, Graves & Smyth, Cheyenne, for appellee Foe.

A. G. McClintock, of McClintock, Mai & Urbigkit, Cheyenne, for appellee Kendig.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Fred W. Phifer brought an action for libel in the district court of Platte County against M. R. Foe and A. Edward Kendig. The trial judge nonsuited plaintiff by granting separate motions of the defendants for summary judgment. Plaintiff-Phifer has appealed.

Plaintiff's suit was based on the alleged publication and distribution of a campaign handbill during the 1966 general election campaign, in which Phifer and Kendig were opponents in a contest for State Senator. The handbill was entitled *Mud Can Be Too Deep And Too Slippery*. It accused can-

didate Phifer of circulating the "false and insidious rumor" that the county treasurer of Platte County had taken county money; and that the county commissioners and county attorney were "covering for him and refuse to prosecute him."

After declaring the "ugly rumor" defaces and maligns characters and paints as dishonest citizens of the county who have enjoyed long and deserved reputations as persons of integrity, the circular stated there must be an answer. There then followed at considerable length an answer to Phifer's accusations against the county treasurer, the county commissioners, and the county attorney. The circular was signed by the Board of County Commissioners of Platte County, with the signature of each member of the board.

The affidavits and depositions upon which the motions for summary judgment were considered leave it undisputed that Foe, as county attorney, was asked by the county commissioners to prepare for them the circular in question, which he did. It was shown to Kendig, who offered only minor suggestions for changes in wording. After it was signed by the commissioners and printed copies were made, Foe (a candidate for reelection as county attorney) and Kendig took part in distribution of the circular by leaving copies at several places for others to hand out.

Phifer admits he had made the accusations referred to in the handbill, but of course he contends there was no justification for calling his accusations a "false and insidious rumor." Also, Phifer does not purport to have any evidence to show that defendants Foe and Kendig knew any of the facts to be different from what was stated and represented in the handbill.

Concerning the presence or absence of actual malice on the part of Foe and Kendig at the time the handbill was prepared and distributed, Phifer claims the handbill constituted a libel on its face—or per se. In a deposition, Phifer stated he knew of nothing to indicate Foe had any malice toward him. He stated the same with respect to Kendig and then added that Kendig and he had a heated campaign. He said if Kendig's "answers" to my articles were not malicious, at least they showed he was at a pique.

Phifer's statement about Kendig's "answers" to his own articles, in the midst of a heated campaign, points up the fact that reply (especially in a political campaign) enjoys a qualified privilege and is recognized as a defense to an action for libel. After an attack on a defendant by a plaintiff, defendant has a right to defend himself against plaintiff's charges, even if he defames the plaintiff in so doing. Fowler v. New York Herald Co., 184 App.Div. 608, 172 N.Y.S. 423, 425; Annotation 103 A.L.R. 476.

When courts say statements made in reply to defamatory attacks enjoy a "qualified privilege," they mean the statements made in reply are privileged unless and until plaintiff proves they are false and made with actual malice. Collier v. Postum Cereal Co., 149 App.Div. 143, 133 N.Y.S. 852, 853; Ashcroft v. Hammond, 197 N.Y. 488, 90 N.E. 1117, 1120. See also Bailey v. Charleston Mail Association, 126 W.Va. 292, 27 S.E.2d 837, 844, 150 A.L.R. 348.

Regardless of whether the alleged defamatory publication was made in reply to accusations first made by plaintiff, the rule may now be considered as established that a candidate for public office may sue for libel only when he can prove the alleged defamatory publication was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not. Bailey v. Charleston Mail Association, supra; Washington Post Company v. Keogh, 125 U.S. App.D.C. 32, 365 F.2d 965, 967; New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 95 A.L.R.2d 1412; St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262.

Inasmuch as the authors of the paper sued on by Phifer had reason to defend against Phifer's accusation that they were

covering for a felon and refusing to prosecute him, a motive other than one conceived in actual malice is apparent. In any event, plaintiff-Phifer has failed to demonstrate by affidavits, depositions or otherwise that evidence is available which would show either Foe or Kendig participated in publication of the alleged defamation with knowledge that it was false, or with reckless disregard of whether it was false or not.

In the light of the trend reflected in the cases we have referred to, the trial court was justified in rejecting Phifer's claim that the handbill sued on was actionable on its face, or per se. And, in the absence of evidence of actual malice, the judge properly concluded no issue of material fact existed and movants were entitled to judgment as a matter of law.

Affirmed.