## COLLIER v. POSTUM CEREAL CO., Limited.

(Supreme Court, Appellate Division, First Department. February 16, 1912.)

1. LIBEL AND SLANDER (§ 101*)—BURDEN OF PROOF.

In a suit for libel in publishing a statement that plaintiff's statements derogatory to defendant's food products were mendacious falsehoods and were published to compel defendant to advertise in plaintiff's publication on plaintiff's own terms, plaintiff had the burden of proving the falsity of defendant's article and actual malice in its publication.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 273–280; Dec. Dig. § 101.*]

2. LIBEL AND SLANDER (§ 100*)—EVIDENCE—ADMISSIBILITY.

It was improper to permit plaintiff to introduce evidence tending to show falsity of claims made by defendant on behalf of its products, since that was not the issue.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 100.*]

3. LIBEL AND SLANDER (§ 86*)—MEANING OF ARTICLE—ENLARGEMENT BY INNUENDO.

The meaning of an article claimed to be libelous cannot be enlarged by innuendo.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 205–208; Dec. Dig. § 86.*]

Laughlin and Dowling, JJ., dissenting.

Appeal from Trial Term, New York County.

---

Action by Robert J. Collier against the Postum Cereal Company, Limited. From a judgment for plaintiff entered upon a verdict for $50,000, and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

See, also, 128 App. Div. 929, 113 N. Y. Supp. 1129.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

James A. O'Gorman (Arthur B. Williams and Stephen P. Anderton, on the brief), for appellant.

Morgan J. O'Brien (James W. Osborne and Edwin W. Willcox, on the brief), for respondent.

MILLER, J. [1] The provoking article published by "Collier's" did not, as is said, make a general charge of fraudulent and deceptive advertising against the defendant. The charge was that the defendant by its methods of advertising was to its own injury causing its food products to be classed in the public mind with fraudulent and failing patent medicines. The specific charge was as follows:

"One widely circulated paragraph labors to induce the impression that Grape-Nuts will obviate the necessity of an operation in appendicitis. This is lying, and potentially, deadly lying. Similarly, Postum continually makes reference to the indorsements of 'a distinguished physician' or 'a prominent health official,' persons as mythical, doubtless, as they are mysterious."

In the retort, which is the basis of this suit for libel, the defendant quoted those specific statements, characterized them as "mendacious falsehoods," and in substance charged that they were published to force the defendant to advertise in Collier's on its own terms. To meet the defendant's plea of privilege, the plaintiff assumed the burden of proving the falsity of the alleged libelous article and actual malice in its publication. That involved proof of the truth of the said specific statements, which naturally would consist of evidence of advertisements calculated or tending to create the impression that Grape-Nuts would obviate the necessity of an operation in appendicitis, of the falsity of such a claim, if made, and of the publication of fictitious indorsements purporting to have been made by physicians and health officials. I am unable to find in the voluminous record before us any evidence whatever of the publication by the defendant of such fictitious indorsements, and, to say the least, it is open to argument whether any of the defendant's advertisements could fairly be construed as making a claim that Grape-Nuts would cure appendicitis. For the obvious purpose of bridging over the weakness of the plaintiff's case on that head, the learned trial counsel attempted, and ultimately succeeded in the attempt, to make a general attack upon the defendant, its products "Postum" and "Grape-Nuts," and its methods of advertising them. Indeed, to read this record without reference to the pleadings, one would think that the parties had changed places, and that the plaintiff as defendant was attempting to justify a general charge of dishonesty made against a plaintiff. It will serve no useful purpose to go into details.

[2] Suffice it to say that the plaintiff was permitted to put in evidence any advertisement of the defendant, the packages in which the

defendant's products were put up, and the printed matter thereon, or distributed therein, and to call experts, physiological chemists, dieticians, and physicians, to prove that claims made by the defendant on behalf of its products, but wholly unrelated to the said specific statements, were false, e. g., that the statement on the Grape-Nuts packages, "A food for Brain and Nerve Centers," was untrue. It is impossible to estimate the effect upon the jury of the clever use made by ingenious counsel of a mass of that kind of evidence and of the array of distinguished chemists, employed in agricultural departments of different states and of the United States in the enforcement of pure food laws, who had had occasion to analyze Postum and Grape-Nuts.

[3] An attempt is made to justify the course of the trial on the ground that the defendant tendered the issue by an innuendo in the answer. The meaning of an article cannot be enlarged by innuendo. Timely objection was taken by the appellant and insisted upon throughout the trial. The error was fundamental and permeated the whole case, and it seems to me that we cannot sustain this judgment without virtually holding that, in a libel case, either party is at liberty to attack the other wholly regardless of the issues in the case.

The judgment and order appealed from should therefore be reversed, and a new trial ordered, with costs to appellant to abide event.

INGRAHAM, P. J., and SCOTT, J., concur.

INGRAHAM, P. J. The discussion of this case by Mr. Justice LAUGHLIN points out various rulings upon questions of evidence, exceptions taken to the charge as made, and refusals to charge, which I think are erroneous, and an examination of the record discloses that in consequence of the rulings of the learned trial judge, both in regard to evidence and passing upon the defendant's requests to charge, the case was not presented to the jury in such a way as to preserve the rights of the defendant.

I also concur with Mr. Justice MILLER, and therefore vote for a new trial.

LAUGHLIN, J. (dissenting). The action is for libel. At the time of the publication of the alleged libel, and for years prior thereto, the plaintiff and his father, Peter F. Collier, since deceased, owned and published a weekly periodical known as "Collier's Weekly," of which plaintiff was the managing editor. The plaintiff determined the policy of Collier's and had and exercised general supervision over it; but the editorials published therein were written by others, and Norman Hapgood, who was the chief editorial writer, was known as "editor" by those connected with the paper, and on one occasion, when a picture of the staff was published in Collier's, the word "Editor" was printed under Hapgood's name. In the complaint it is charged that the libel was of and concerning the plaintiff as one of the *owners* and one of the *editors* of Collier's Weekly, and was composed and published "with the intent to injure this plaintiff and the newspaper 'Collier's Weekly,' of which the plaintiff is one of the

owners and editors, in his good name and reputation." The alleged libel was published on the 4th day of September, 1907, in answer in part, at least, to an editorial published in Collier's Weekly on the 27th day of July, 1907, which it is claimed made both the *occasion* and the *article* privileged. It is alleged in the complaint and admitted by the answer that the defendant is a copartnership association organized and existing under the laws of the state of Michigan, and engaged in the business of manufacturing and selling food products, and, among others, "Grape-Nuts," a food, and "Postum," a beverage. For several years prior to December 23, 1904, the defendant had advertised Grape-Nuts and Postum in Collier's, for which it paid about $9,000 per annum, and on that day, through the Grandin Advertising Agency, Limited, it entered into a contract for advertising said products in Collier's for the year commencing February 25, 1905. The contract contained no express restriction with respect to the contents of the advertisements; but it provided, among other things, that they should be inserted to the right of reading matter, and at "bottom of column" and "set in body type of paper, * * * leaded if reading on same page is leaded, to conform as near as possible to size of type as shown on copy."

Prior to the 4th of November, 1905, Samuel Hopkins Adams had written a series of articles entitled "The Great American Fraud," attacking patent-medicine advertising as an imposition on the public, and they were published from time to time under his name, in Collier's. The issue of Collier's Weekly published on said 4th day of November contained an editorial with the heading "Editorial Bulletin," in which reference was made to the articles written by Mr. Adams and published in Collier's, and, after charging and pointing out at length the writer's basis for the charge, that the advertisers of patent medicines owing to the revenue derived from the advertisements exercised a powerful influence over the press in the dissemination of false claims with respect to the merits of patent medicines, and the suppression of news relating to the injurious and poisonous effects thereof, and stating that Collier's had been charged with inconsistency, in that, while declining advertisements of certain patent medicines, it accepted advertisements of beer and whisky—it announced that Collier's was not engaged in a total abstinence crusade, but merely a crusade "against fraud and poison, against alcohol and drugs masquerading in the innocent guise of 'tonics' and 'headache' powders," and that, to avoid any further misunderstanding between it and its readers, it had determined to refuse advertisements of beer and whisky as well as patent medicines in the future, and closed with an announcement as follows:

"We have tried to formulate an advertising policy, based on common sense rather than 'holiness,' that will protect our readers from being imposed upon. That policy is briefly as follows: Collier's will accept no advertisements of beer, whisky, or alcoholic liquors; no advertisements of patent medicines; no medical advertisements or advertisements making claims to medicinal effect; no investment advertising promising extraordinary returns, such as stocks in mining, oil, and rubber companies. The editor reserves the right to exclude any advertisement which he considers extravagant in claim or offensive to good taste."

The lower right-hand corner of the page on which this announcement was made contained an advertisement of Postum headed in large heavy type, "FUNNY!!" with a hand pointing to that word, and with the further heading on the line below, "People Will Drink Coffee When It Does Such Things," and the body of the advertisement was as follows:

" 'I began to use Postum because the old kind of coffee has so poisoned my whole system that I was on the point of breaking down, and the doctor warned me that I must quit it.

" 'My chief ailment was nervousness and heart trouble.

" 'Any unexpected noise would cause me the most painful palpitation, make me faint and weak.

" 'I had heard of Postum and began to drink it when I left off the old coffee. It began to help me just as soon as the old effects of the other kind of coffee passed away. It did not stimulate me for a while, and then leave me weak and nervous as coffee used to do. Instead of that it built up my strength and supplied a constant vigor to my system which I can always rely on. It enables me to do the biggest kind of a day's work without getting tired. All the heart trouble, etc., has passed away.

" 'I give it freely to all my children, from the youngest to the oldest, and it keeps them all healthy and hearty.'

"Name given by Postum Co., Battle Creek, Mich.

"There's a reason.

"Read the little book, 'The Road to Wellville,' in pkgs."

The page containing the editorial announcement and this advertisement was cut out, evidently by a reader, and sent to Collier's by mail, with a notation thereon reading as follows: "Consistency Thou art a jewel." On the 22d day of November, 1905, Mr. Nast, Collier's advertising manager, wrote the agency through which the contract with Collier's was made, and Mr. Post, who virtually owned the defendant, and who was chairman of its board of managers and exercised entire control over it and prepared its advertising matter, and drew attention to said advertising policy then recently adopted by Collier's, a copy of which was inclosed, and stated that Collier's would not in the future publish "the style of copy" defendant had been sending for Postum and Grape-Nuts, and suggested "that regular display copy" might be so written that it could be inserted without violating Collier's policy and still prove of great value to defendant, and further stated:

"I do not question the value of Postum and Grape-Nuts, but I feel that insertion of advertising along the lines of your former copy would be in violation of our advertising policy."

Post replied under date of November 29th, denying that defendant's advertisements claimed any medicinal ingredients or effects for Grape-Nuts and Postum, and stating that he claimed merely that coffee is injurious, and that people injured by it could be helped by using a food coffee, and that people used food not suited to their requirements, and "that by changing their food and using well-selected natural food like Grape-Nuts, they can be physically and mentally improved"; and further stating, in effect, that if Collier's did not see fit to accept defendant's advertising, they were at liberty to discontinue publishing it, but protested against being classed with

patent medicine advertisers. On December 6th, Nast replied as follows:

"I have your letter of November 29th, and agree with you that Postum and Grape-Nuts should never, for one moment, be classed as patent medicines, nor have I done so.

"During our present campaign against patent medicines, however, it is not possible for us to publish, in any advertisement, symptoms of heart trouble, stomach troubles, and nervous diseases, which are clearly subject for the family physician's attention.

"I do not object to Postum Cereal as a substitute for coffee, nor do I state that your present advertising makes claims of medicinal *ingredients*; but what conflicts with our advertising policy is that the advertising makes claims of medicinal *effects*.

"We have no doubt whatever that Postum and Grape-Nuts are doing a great deal of good; but, in view of our present campaign against patent medicines, it is impossible for us to allow their promotion through our columns in the style of copy we have been inserting."

Post replied on December 11th, stating that it might be correct if it had been stated that defendant made claims that Grape-Nuts and Postum produced "physical and mental effects"; but that it was not correct to charge that it claimed "medicinal effects" and gave his reasons for claiming that those products produced beneficial mental and physical effects, and objected to having the work he was doing in introducing these natural foods to the public classed with the work which Collier was making a crusade against. Nast again replied on December 18th, reiterating his position and pointing out that Postum and Grape-Nuts could be advertised "without giving a list of symptoms which may be obviated by the use of the two foods," and that the symptoms incorporated in defendant's advertising "come in the field of the physician's work, and should not, therefore, appear in type in conjunction with a food, any more than with a patent medicine," and stating that Collier's could not during its campaign against patent medicines insert the style of copy which defendant had been furnishing, and closed with the following:

"I dislike very much to lose the Postum and Grape-Nuts advertising; and hope you may be able to see my difficulty and submit copy written on general publicity lines, which would overcome it, and, at the same time, prove a valuable investment for you."

On the 26th of December Collier's returned advertising copy received from the advertising agency on December 20th, and from that time, without further negotiations, both parties apparently acquiesced in the abandonment of the advertising contract. The editorial published in Collier's July 27, 1907, with reference to which the alleged libelous article was written, was as follows:

"DECEPTION THERE IS, in advertising, as in all dealings between the imperfect human animal and his equally imperfect fellow. It is lessening with the spread of intelligence. Some, that is still conspicuous in print, is unnecessary, and hence incredibly stupid. For example, take certain recent exploitations of 'Grape-Nuts' and its fellow article 'Postum,' put out by the same concern. One widely circulated paragraph labors to produce the impression that 'Graps-Nuts' will obviate the necessity of an operation in appendicitis. This is lying, and, potentially, deadly lying. Similarly, 'Postum' continually makes reference to the indorsements of 'a distinguished

physician' or 'a prominent health physician,' persons as mythical, doubt-
less, as they are mysterious.  Here are two articles of food    FUTILITY
which unless there is some secret reason against it should
sell on their merits.  Yet their manufacturer persists in insulting the
intelligence and alienating the support of people who might otherwise pur-
chase them.  'I've stopped taking Grape-Nuts since it became a patent medi-
,cine,' said an acquaintance of ours recently.  The editor of a prominent re-
ligious journal, writing of the cancellation of certain patent-medicine con-
tracts, says: 'I have sometimes the same feeling toward the Postum ad-
vertisements, and those of Grape-Nuts.  The manner in which they are push-
ed, and the phraseology used to commend them, constantly cause me an-
noyance.'  If these breakfast foods desire to be classed in the public mind
with the *fraudulent and failing patent medicines*, they are taking the prop-
er steps to that end.  But isn't it worth their while to stop and consider
whether, in the long run, it will pay to identify themselves with a class of
merchandise which has no other selling power, save only that which it de-
rives, at an enormous outlay an increasing risk, from *mendacious claims?*"

At that time Mr. Post was in Paris.  He received a copy about
the middle of August, and according to his testimony, after reading
the editorial, he immediately wrote and mailed to the defendant for
publication the alleged libelous article as follows:

### "THE 'YELL-OH' MAN, AND ONE OF HIS WAYS.

"To call a man a liar seems rude, so we will let the reader select his own
term.

"Some time ago the manager of 'Collier's Weekly' got very cross with us
because we would not continue to advertise in his paper.

"We have occasionally been attacked by editors who have tried to force
us to advertise in their papers at their own prices, and on their own condi-
tions, failing in which we were to be attacked through their editorial col-
umns.  The reader can fit a name to that tribe.

"We had understood that the editor of Collier's was a wild cat of the
Sinclair 'jungle-bungle' type, a person with curdled gray matter, but it seems
strange that the owners would descend to using their editorial columns,
yellow as they are, for such rank out-and-out falsehoods as appear in their
issue of July 27 where the editor goes out of his way to attack us, and the
reason will appear tolerably clear to any reader who understands the venom
behind it.

"We quote in part as follows: 'One widely circulated paragraph labors
to induce the impression that Grape-Nuts will obviate the necessity of an
operation in appendicitis.  This is lying, and potentially deadly lying.  Sim-
ilarly, Postum continually makes reference to the indorsements of "a dis-
tinguished physician" or "a prominent health official," persons as mythical,
doubtless, as they are mysterious.'

"We do not hesitate to reproduce these mendacious falsehoods in order
that it may be made clear to the public what the facts are, and to nail the
liar up so that people may have a look at him.  If this poor clown knew
what produced appendicitis, he might have some knowledge of why the use
of Grape-Nuts would prevent it.  Let it be understood that appendicitis re-
sults from long continued disturbance in the intestines, caused primarily by
undigested food, and chiefly by undigested starchy food, such as white bread,
potatoes, rice, partly cooked cereals and such.  These lie in the warmth and
moisture of the bowels in an undigested state, and decay, generating gases
and irritating the mucous surfaces until under such conditions, the lower
part of the colon and the appendix become involved.  Disease sets up, and
frequently of a form known as appendicitis.

"Now then, Grape-Nuts food was made by Mr. C. W. Post, after he had an
attack of appendicitis, and required some food in which the starch was predi-
gested.  No such food existed; from his knowledge of diatetics he perfected
the food; made it primarily for his own use, and afterward introduced it
to the public.  In this food the starch is transformed by moisture and long-

time cooking into a form of sugar, which is easily digested and does not decay in the intestines. It is a practical certainty that when a man has approaching symptoms of appendicitis the attack can be avoided by discontinuing all food except Grape-Nuts and by properly washing out the intestines. Most physicians are now acquainted with the fact and will verify the statement.

"Of course, this is all news, and should be education to the person who writes the editorials for 'Collier's' and who should take at least some training before he undertakes to write for the public.

"Now as to the references to 'a distinguished physician' or 'a prominent health official' being mythical persons: We are here to wager 'Collier's Weekly,' or any other sceptic or liar any amount of money they care to name, and which they will cover, that we will produce proof to any board of investigators that we have never yet published an advertisement announcing the opinion of a prominent physician or health official on Postum or Grape-Nuts when we did not have the actual letter in our possession. It can be easily understood that many prominent physicians dislike to have their names made public in reference to any article whatsoever; they have their own reasons, and we respect those reasons, but we never make mention of indorsements unless we have the actual indorsement, and that statement we will back with any amount of money called for.

"When a journal willfully prostitutes its columns, to try and harm a reputable manufacturer in an effort to force him to advertise, it is time the public knew the facts. The owner or editor of Collier's Weekly cannot force money from us by such methods.                    Postum Cereal Co., Ltd."

On receipt of this article by defendant it immediately, pursuant to instructions received from Post, caused the same to be published throughout the country and in 44 newspapers in this state, 11 of which are in the county of New York.

The history of the case down to the publication of the alleged libel presents other facts which have received due consideration. Those deemed most material and controlling have been set forth, and the substance of the others has been sufficiently stated for the purposes of deciding the questions presented on the appeal.

It is contended by the learned counsel for the appellant that the motion to dismiss the complaint should have been granted, and that, if there was a question for the jury, the verdict is against the weight of the evidence. It is claimed that it was not shown that the plaintiff was the editor of Collier's to whom the alleged libelous article referred; that both the occasion and the article published by appellant were privileged; and that therefore it was incumbent on plaintiff to show both the falsity of the article and actual malice; and that he failed to give evidence of actual malice sufficient to take the case to the jury. It is not now contended, although the claim was made on the trial, that respondent failed to present evidence for the consideration of the jury on the question of falsity. Certain exceptions to the charge may be appropriately considered in this connection. Counsel for appellant requested the court to charge that plaintiff had failed to show that he was the editor referred to in the article, and that he was not entitled to recover any damage for injury to Collier's Weekly and excepted to the refusal to charge as requested. It is to be borne in mind that the alleged libel published by the defendant does not specify any particular editor. It cannot be held as matter of law, I think, that it refers only to the editor who wrote the article which it is claimed provoked the reply. The

plaintiff was the managing editor and as such was responsible for all editorials published in Collier's, and would be liable personally and to criminal prosecution for a libel published therein. Penal Law (Consol. Laws 1909, c. 40) § 1344. It was for the jury to determine whether readers of average intelligence would understand that the reference was to plaintiff. Moreover, on the theory on which the case was tried and submitted to the jury, it is highly improbable that there has been a recovery for any damages to the plaintiff as an editorial writer. Plaintiff has recovered on account of his connection with and interest in Collier's Weekly as part owner and managing editor and the injury to him in his reputation and business. He offered no evidence tending to show that he was an editorial writer or was injured in that capacity.

It is contended in behalf of the respondent that he has not recovered for any injury to Collier's, and that the recovery has been limited to general damages sustained by him individually; but I think the record does not sustain that proposition. Plaintiff in his pleadings complains both of damages to him individually and to Collier's Weekly, and in the instructions of the court to the jury attention was drawn to the fact that plaintiff was one of the owners as well as one of the editors of Collier's, and that he claimed that the libelous words were false "and were composed and published by the defendant with the intent to injure this plaintiff and the newspaper 'Collier's Weekly,' of which the plaintiff is one of the owners and editors, in his and its good name and reputation," and claimed to be damaged "by reason of the premises" in the sum of $250,000. The court further instructed the jury that, if the article charged plaintiff with having prostituted the columns of Collier's Weekly "to try and harm a reputable manufacturer in an effort to force him to advertise therein, then such charge affected the plaintiff in his business and was libelous per se; and the publication of an article libelous per se is presumed in law to be false and malicious, and, unless the defendant has established a legal excuse, the plaintiff is entitled to recover a verdict without allegation or proof of special damage, because the falsity of the words and resulting damage are presumed." The court also charged that if the jury found for plaintiff he was entitled to recover for the injury to his feelings and reputation. The instructions with respect to exemplary damages were proper, but are not in point here.

The record contains the opening addresses of counsel for the respective parties, but not their arguments to the jury. There is nothing in these addresses to indicate that plaintiff limited the claim made in his complaint, or did not seek to recover the damages which he sustained as part owner of Collier's Weekly. From the allegations of the complaint, the proof of part ownership of Collier's by plaintiff, and the charge delivered by the court, the jury may well have understood that the plaintiff was entitled to recover, not merely the damages which he sustained individually, but those which he sustained as part owner of Collier's, as well. If the question were without precedent, I would hesitate before holding that separate recoveries may be had by the individual members of a copartnership of the damages which they sustain as copartners, and would stop to inquire whether

that might not in some instances prejudice the rights of the creditors of the firm, or the rights of copartners who had furnished the capital, or who would on dissolution be entitled to a greater share in the surplus than the proportionate share specified in the articles of copartnership; but the rule appears to be well settled and sustained by decisions and text-book writers, which have been followed by a recent decision in this court, that damages caused by a libel on the copartnership business may be recovered in a joint action by all of the members of the firm, or that any partner may, in an individual action, recover the damages he sustained both in his individual capacity and as a member of the firm. Tobin v. Best Co., 120 App. Div. 387, 105 N. Y. Supp. 294; Rosenwald v. Hammerstein, 12 Daly, 377; Constitution Pub. Co. v. Way, 94 Ga. 120, 21 S. E. 139; Wills v. Jones, 13 App. D. C. 482; Noonan v. Orton, 32 Wis. 106; 18 Am. & Eng. Enc. Law (2d. Ed.) 1055; 25 Cyc. 426.

If the members of a firm bring an action to recover damages for an article which is libelous per se as against the firm, they may recover general damages for the probable injury to their business without proof of any damages, for the damages are presumed; but they cannot recover for any injury sustained by the members of the firm in their individual capacities. Taylor v. Church, 1 E. D. Smith, 279, affirmed on this point 8 N. Y. 452; Havemeyer v. Fuller, 10 Abb. N. C. 9; Ludwig & One v. Cramer et al., 53 Wis. 193, 10 N. W. 81; Harrison v. Bevington, 34 Eng. C. L. 975; 25 Cyc. 426. In this respect, the rule is somewhat similar to that by which a corporation is entitled to recover for a libel constituting an attack on its business methods, and the officers of the corporation may recover individually for the damages which they have sustained by the same libel. Reporters' Ass'n v. Sun Printing Co., 186 N. Y. 437, 79 N. E. 710; Town Topics v. Collier, 114 App. Div. 191, 99 N. Y. Supp. 575; Kemble & Mills v. Kaighon, 131 App. Div. 63, 115 N. Y. Supp. 809; Mutual Res. Co. v. The Spectator Co., 50 N. Y. Super. Ct. 460; Arrow Steamship Co. v. Bennett, 73 Hun, 81, 25 N. Y. Supp. 1029; Union Ass'n v. Heath, 49 App. Div. 247, 63 N. Y. Supp. 96.

Counsel for the appellant contends that in so far as the article libeled Collier's it constituted a libel on a place or thing, as distinguished from the firm or its business, within the rule on that subject stated in numerous decisions (see Marlin v. Shields, 171 N. Y. 384, 390, 64 N. E. 163, 59 L. R. A. 310; Maglio v. New York Herald, 83 App. Div. 44, 82 N. Y. Supp. 509; s. c., 93 App. Div. 546, 87 N. Y. Supp. 927; Kennedy v. Press Pub. Co., 41 Hun, 422; Le Messna v. Storm, 62 App. Div. 150, 70 N. Y. Supp. 882; Bossi v. N. Y. Herald, 33 Misc. Rep. 622, 68 N. Y. Supp. 898, affirmed 58 App. Div. 619, 68 N. Y. Supp. 1134), which hold that in such case there can be no recovery without proof of special damages; and, there being no proof of special damages here, it is claimed that it was error, in any event, to decline this request to charge. I am of opinion that the libel on this weekly periodical, known as "Collier's," was a libel, not upon a place or thing, but against the business methods under which Collier's was conducted; and since plaintiff was entitled to recover all of his damages in one action, he could recover

for the injury he sustained as a part owner of Collier's. The jury, therefore, had a right, without other proof of such damages than is presumed by the libel, to assess them as if the action were brought by the firm; but plaintiff's right to recover in this regard was, of course, confined to his interest in the firm, which was shown. I do not say that the jury have awarded damages on account of plaintiff's interest in the firm; but from the manner in which the case was presented to them it cannot be said that they have not, and still, for the reason assigned, I think there was no error. The editorial published in Collier's constituted an attack on defendant's business methods, and therefore afforded a privileged occasion presumptively preventing the inference of malice which would otherwise arise from the publication of a defamatory article, and the court so charged. The business and business methods of the defendant having been attacked, it had a right to defend itself, and in publishing its defense it was protected by a qualified privilege to do so in a manner calculated to reach and convince the readers and those who would become aware of the attack made upon it by the editorial in Collier's, that the charges were false and groundless, and its defense, even though mistaken or false, if germane to the charge and made without actual malice, and not too vindictive or too violent or in language too denunciating or unnecessarily defamatory, was privileged, and no liability could be predicated thereon (Ashcroft v. Hammond, 197 N. Y. 488, 90 N. E. 1117; Sunderlin v. Bradstreet et al., 46 N. Y. 188, 7 Am. Rep. 322; Klinck v. Colby, 46 N. Y. 427, 7 Am. Rep. 360; Moore v. Manf. Nat. Bank, 123 N. Y. 420–426, 25 N. E. 1048, 11 L. R. A. 753); and the burden in such case would be on the plaintiff to show both falsity and actual malice to entitle him to recover (Van Wyck v. Aspinwall, 17 N. Y. 190–193; Hemmens v. Nelson, 138 N. Y. 517, 34 N. E. 342, 20 L. R. A. 440; Coloney v. Farrow, 5 App. Div. 607, 39 N. Y. Supp. 460; Haft v. First Nat. Bank, 19 App. Div. 425, 46 N. Y. Supp. 481; Koenig v. Ritchie, 3 Fost. & F. 413).

The privilege, however, is confined to *legitimate self-defense,* fairly arising out of the charge constituting the attack, and it does not extend to an unfair defense or to matters irrelevant thereto, and it does not warrant a defamatory attack upon the *motives* of the author or those responsible for the publication of the provocatory article, for that would not be germane to a proper defense, which would ordinarily be confined to a denial and to an assertion of what was claimed to be the truth with respect to the subject-matter of the attack and a statement of the facts and anything tending to sustain them. Klinck v. Colby, supra; Tuson v. Evans, 12 Ad. & El. 733; Cassidy v. Brooklyn Eagle, 52 N. Y. St. Rep. 336, reversed on another point 138 N. Y. 239, 33 N. E. 1038; Court of Appeals Cases and Points, vol. 28, No. 208 (1893); 1 Odgers on Libel & Slander (5th Ed.) p. 292, and note page 294; Ashcroft v. Hammond, supra. And, moreover, the retort must be sufficiently proximate in time to afford the privilege which is accorded largely on the theory that the retort and defense in such case are usually uttered or published on the impulse and in the heat of passion, on receiving information of the attack, and are immediately provoked thereby. Keller v. Am. Bottlers' Pub. Co., 140

App. Div. 311, 125 N. Y. Supp. 212; Lee v. Woolsey, 19 Johns. 319, 10 Am. Dec. 230; Willover v. Hill, 72 N. Y. 36; Maynard v. Beardsley, 7 Wend. 560, 22 Am. Dec. 595; Gould v. Weed, 12 Wend. 12.

Where a publication is qualifiedly privileged, malice may not be inferred from mere falsity of the charge (Klinck v. Colby, supra; Coloney v. Farrow, supra); but it may be inferred from knowledge of the falsity of the charge, or disbelief therein, or lack of reasonable ground for belief in its truth, and the tenor of the article, as where the language used is unnecessarily violent or denunciatory (Klinck v. Colby, supra; Ashcroft v. Hammond, supra; Loughton v. Bishop of Sodor and Man, 4 L. R. [1871–73] 495, 505). The test is not merely whether the *occasion* is privileged, for the occasion may afford a privilege and part of the article be privileged and part defamatory and libelous. Moore v. Manf. Nat. Bank, supra. The rule is that the burden is on the defendant of pleading and proving privilege, and that, where part of an article is privileged and part is not, it should not be construed strictly in determining what is and what is not privileged. Stevenson v. Ward, 48 App. Div. 291, 62 N. Y. Supp. 717; Stuart v. Press Publishing Co., 83 App. Div. 467–474, 82 N. Y. Supp. 401. But this rule of *liberality* in construing the article does not extend to a charge made against a third party on an occasion privileged with respect to another, but not as to him. Moore v. Manf. Nat. Bank, supra.

The rulings upon the trial were for the most part very favorable to appellant. The court did not rule that any part of the article was libelous per se, or was not privileged, or that the presumption that it was privileged had been overcome, and left all of these questions to the jury on the theory that they depended on determinations of fact on conflicting evidence, with proper instructions, however, as to the law with respect to particular findings of fact. If the article was not privileged, it was clearly libelous per se, for it charged Collier's with having attacked defendant because it did not advertise in Collier's on the conditions imposed, which was in effect a charge of extortion and, it was otherwise libelous per se also. It might well be argued on this record that as matter of law Post had no reasonable ground for believing that the motive for the editorial attack was his company's failure to conform to Collier's requirements with respect to the form of advertising, and that even, if he so believed, the charge with respect to the motive in publishing the editorial was libelous per se and could only be justified by actual proof, not of his belief concerning the fact, but of the truth of the charge, upon the theory that as matter of law it was not protected by the qualified privilege.

I am of opinion that the court should have ruled as matter of law that the article published by defendant was not privileged with respect to the motive attributed to Collier's, or that, if it was presumptively privileged, the evidence overcame the privilege as matter of law; but the defendant was not prejudiced by being given the opportunity of arguing these questions to the jury on the facts. Collier's took a dignified, definite, consistent, and determined stand with Post with

reference to defendant's advertisements; and that controversy had been settled by mutual acquiescence some 18 months before the editorial was published. The editorial was along the line of policy which led Collier's to decline to publish defendant's advertisements in the form presented. The undisputed evidence shows, and it was admitted by one of the attorneys for the defendant, that without additional space or additional charge the defendant could have conformed to the requirements of Collier's with respect to display advertising and could have continued to advertise its products in Collier's, but, of course, not as effectively for its purpose as in the form in which it had theretofore been advertising, and unquestionably that was its reason for discontinuing advertising in Collier's.

The respondent also gave evidence tending to show, and sufficient to sustain the determination of the jury in that regard, not only falsity of the article in respect to the motive imputed to Collier's, but also that the statements in Collier's editorial to the effect that the defendant was guilty of deceptive advertising, and which the alleged libelous article charged were false, and that in two respects, at least, were mendacious falsehoods, were true, and, if so, it of course follows that the libelous article was false in those respects also. If the alleged libel was false, the jury were justified in finding on the evidence that its falsity was known to the defendant through Post, who represented it, and it is doubtful whether any findings to the contrary could be sustained on the evidence. The jury were also justified in finding that the alleged libelous article was published maliciously. The evidence supporting this finding is falsity of the article and knowledge of its falsity and the nature of the charge and the intemperate language in which it is clothed and the wide publicity given thereto, which was not given hastily, as in the case of the preparation of the article by Post, according to his testimony, but after due deliberation, for, having transmitted the article to his company at Battle Creek, Mich., by mail from Paris, with instructions with respect to giving it to the public in the manner in which it was published, he could, had he so desired, for 20 days intervened between the receipt of the editorial by him and the publication of the defense thereto and he was a man of means, have cabled instructions countermanding or modifying his instructions by mail; and the other representatives of the company had nearly six weeks within which to consider the editorial before the defense thereto was made.

The appellant predicates error on the reception of evidence which the respondent was permitted to introduce, over objection and exception duly taken that it was immaterial, tending to show that appellant was guilty of deceptive advertising. This evidence related to advertisements published in the press and periodicals within a comparatively short period prior to the editorial published in Collier's, to the printed matter on the wrappers in which appellant's products were put on the market for sale, to chemical analysis of defendant's products and the opinions of medical experts, some of whom were connected with the health departments of other states and who had in the performance of their official duties investigated appellant's products, as to whether appellant's products were calculated to produce

the effects which appellant by its advertisements represented. The appellant's principal objection to this evidence is made upon the theory that it only characterized the two specific charges in the editorial published in Collier's, which were quoted in the libel, as mendacious falsehoods, and that the evidence should have been confined to those. It is not seriously contended by the learned counsel for the appellant, and it could not successfully be contended, that, with the burden of proof resting on the respondent of showing both falsity of the alleged libel and actual malice in its publication, it was not relevant to the issues to show the falsity by proving the truth of what it denounced as false. See Maynard v. Beardsley, 7 Wend. 561, 22 Am. Dec. 595; Lee v. Woolsey, 19 Johns. 319, 10 Am. Dec. 230.

It is manifest, therefore, that the real questions are what part of the editorial did defendant charge to be false, and whether the evidence received tended to show the falsity of the appellant's publication or malice on its part. I am of opinion that the editorial published in Collier's charged the appellant with deceptive advertising. The subject of the editorial was deceptive advertising. The first sentence charges generally that there is deception in advertising. The second sentence states that deceptive advertising is lessening, and the third states that "Same," plainly meaning deceptive advertising, is stupid. The fourth then cites as examples of stupid deceptive advertising recent exploitations of Grape-Nuts and Postum. This is a general charge, and the following sentences refer more specifically to some of the recent exploitations of these products as illustrations of those embraced in the general charge. The fair construction of the alleged libel is that it denounced as "out-and-out falsehoods" the entire editorial so far as it related to it, and as "mendacious falsehoods" the two more specific charges, and this is the construction it has placed on it by its answer. In that view any evidence of recent deceptive advertising was admissible, and more than a single instance would be required to sustain Collier's charge and thus disprove defendant's charge contained in the alleged libel. Townsend on Libel & Slander, 319; Sterling v. Sherman, 20 Johns. 204; Stilwell v. Barter, 19 Wend. 487; Osterheld v. Star Co., 146 App. Div. 388, 131 N. Y. Supp. 247; Lanphere v. Clark, 149 N. Y. 472, 44 N. E. 182.

The trial court, however, did not construe the alleged libel thus broadly, and repeatedly made general rulings showing an intention to confine the evidence with respect to advertisements relating to the two charges quoted in the libel with respect to appendicitis and to testimonials. In some instances it appears that counsel for respondent failed to keep within the general rulings of the court and introduced evidence which under such rulings would doubtless have been stricken out had a motion to that effect been made. The principal evidence presented in behalf of respondent of which complaint is made tended to show *both* that appellant *advertised* that appendicitis could be avoided or averted by the use of Grape-Nuts, *and that this was not true*. That evidence not only tended to show that appellant was guilty of deceptive advertising, but it bore directly on the specific charge, which appellant characterized as "mendacious falsehoods,"

that one widely circulated paragraph of deceptive advertising by appellant labored to produce the impression that the use of Grape-Nuts would obviate the necessity of an operation in appendicitis, which was the theory on which it was received by the trial court. The respondent introduced in evidence many advertisements of the appellant in the form of testimonials from physicians and others with respect to the beneficial effects of the use of Grape-Nuts and Postum, and showed that the appellant offered prizes for testimonials; but respondent did not offer any other evidence tending to show that such testimonials had not in fact been received. I am of opinion that the nature of these testimonials and the phraseology in which they were written presented a question of fact as to whether some of them were not only solicited by the defendant but prepared in its interests. Were this not so, however, the respondent had a right to show that part of the appellant's article was false, and the mere attempts to show that part of it was false did not oblige the respondent to show that it was false in toto. Even on the theory, therefore, on which the case was tried, the evidence presented by the respondent, with the exception of some which was not within the general rulings of the court as already stated, was competent and relevant on the issue of falsity and malice and justified the jury in determining that in so far as the article is defamatory the privilege was so abused that it was lost, that the publication was false, that appellant knew it was false, and was actuated by express malice. This evidence was introduced by the respondent on its case in chief, but that was not an admission that the publication was privileged, nor was the fact that the order of proof was not followed prejudicial to the rights of the appellant.

Ordinarily, the jury in a libel case may either find for the defendant or in favor of plaintiff for only nominal damages, and they should be so instructed (Amory v. Vreeland, 125 App. Div. 850, 110 N. Y. Supp. 859); but here the amount of the verdict shows that appellant would not have been benefited by such a charge if it would have been proper on the facts.

Appellant also asks a reversal on jurisdictional grounds. It claims that it had been brought into court as a copartnership and not as a corporation, and that unless it was an unincorporated association having more than seven members no judgment could be rendered against it, and that even on that theory the action should have been brought against its president or treasurer under section 1919 of the Code of Civil Procedure. It was shown that appellant consisted of only four members. This evidence apparently came out incidentally, for there was no issue with respect to it on the preliminary examination of Mr. Post, who testified that he was chairman, and his brother vice chairman and secretary of defendant, and who the treasurer was, and that all the members "of this copartnership association are officers, except my daughter," and that there were four members in 1907. It was alleged in the complaint that the defendant is "a partnership association, duly organized and existing under and by virtue of the laws of the state of Michigan," and this allegation was admitted by the answer. The question was first raised by a motion to

dismiss the complaint on this ground made at the close of the plaintiff's case.

The learned counsel for the appellant contends that the allegation was not sufficient to show that the defendant was a corporation, and he relies on the case of Chapman v. Barney, as President of the United States Express Company, 129 U. S. 677, 9 Sup. Ct. 426, 32 L. Ed. 800, wherein it was held that the allegation that the defendant company was organized under and by virtue of the laws of the state of New York was not an allegation that it was a corporation. When this question was raised, counsel for the respondent did not ask leave to amend the complaint, but over objection and exception was allowed to introduce certain sections from the Constitution of the state of Michigan and certain statutes of that state and decisions construing them, which show that such a copartnership association has many of the attributes of a corporation and for the purpose of suing and being sued is regarded as a corporation. Section 11, art. 15, Constitution of Michigan 1850; section 2, art. 12, Constitution of Michigan 1908; section 10, Michigan Public Acts No. 188, Laws of 1905; Manhard Hardware Co. v. Rothschild, 121 Mich. 657, 80 N. W. 707; Rouse, Hazard & Co. v. Detroit, 111 Mich. 251, 69 N. W. 511, 38 L. R. A. 794; Sanitas Nut Food Co., Ltd., v. Force Food Co. (C. C.) 124 Fed. 302.

It is not entirely clear that the complaint did not sufficiently allege that the defendant was a corporation, but, if it did not, I am of opinion that this evidence was sufficient to overcome the objection. Of course, technically the complaint, if its allegations are insufficient, should have been amended to conform to the evidence on this point; but since it is manifest that defendant was not taken by surprise, by the reception of the evidence, and has not been prejudiced, it may, for the purpose of sustaining the judgment, be deemed amended. The cause of action does not depend on whether the defendant is a copartnership or a corporation, and that only becomes material on the point now raised with respect to the form in which the action is to be prosecuted. Fox v. Erie Preserving Co., 93 N. Y. 54; Harmon v. Vanderbilt Co., 79 Hun, 392, 29 N. Y. Supp. 783, affirmed 143 N. Y. 665, 39 N. E. 20; Rothschild v. Grand Trunk R. R. Co. (Sup.) 10 N. Y. Supp. 37. Here the action has been prosecuted against defendant in the appropriate form if it be a corporation, but not otherwise, and sufficient facts are alleged to show that plaintiff was proceeding upon the theory that defendant was a corporate entity, and it has acquiesced therein without objection until the making of said motion, and it was then, I think, as contended by the learned, counsel for respondent, too late for it to be heard to complain of the admission of the evidence to show that it was a corporate entity. Gorton Steamer Co. v. Spofford, 5 Civ. Proc. R. 116.

Error is predicated on the instructions to the jury contained in the plaintiff's request No. 11, which is as follows:

"If the jury should find that the charges contained in the Adams editorial were true that the defendant's advertisement in regard to Grape-Nuts and Postum were deceptive, they must find that the defendant's libel was not a privileged communication."

If the jury found that the charges contained in the editorial were true, it necessarily follows that the defendant's publication, in which it was charged that the editorial was false and contained mendacious falsehoods, was false. It is claimed, however, that it would not necessarily follow that the defendant *knew* that it was false. On the theory that the entire article published by defendant was presumptively privileged, which was adopted on the trial, this charge was not strictly accurate, unless the undisputed evidence shows that if the editorial was true defendant knew or should have known that it was true. If, as charged in the editorial published by Collier's, the defendant was guilty of deceptive advertising, it is a reasonable inference that it knew it, for it prepared these food products, and Post personally supervised and directed all of the advertising, and yet it can scarcely be said that there is no conflict in the evidence on that point. If defendant did not know and was not chargeable with knowledge that the editorial was true, then doubtless it could not be said as matter of law that the privilege was destroyed, for that would be ruling, in effect, that malice existed, as matter of law. If the editorial was true, even though it may not be said as matter of law that defendant knew that it was true, and thus that the alleged libel was false, yet I think that in publishing the alleged libelous article so long after the controversy over the advertisements, and after long deliberation following the publication of the editorial, and in view of the vindictiveness of the alleged libel and the criminal motive attributed to Collier's and the severe reflection on the periodical and the business methods of its proprietors, it may be held as matter of law that, if there was any privilege to answer a truthful charge—a point on which no opinion is now expressed—the alleged libel was not protected thereby, and therefore the court was justified in ruling that if the editorial was true there was no privilege, for that is equivalent to saying that the privilege, if it would otherwise exist, was in the circumstances lost.

Moreover, the court in the main charge, after submitting it as a question of fact for the jury to determine, under proper instructions, whether the alleged libel was privileged, instructed them that if it was privileged it was incumbent on the plaintiff to show by facts and circumstances that it was false and that its publication was actuated by malice, which could not be implied from the falsity of the publication alone, and that the question was not whether the publication was true or false, but whether the defendant knew or believed it to be false, and that "defendant may have arrived at conclusions without sufficient evidence, but the privilege protects it upon the ground until the plaintiff has overcome the presumption of good faith by proof of the malicious purpose to defame the plaintiff under cover of the privilege." The court had also unequivocally and unqualifiedly charged that if defendant acted in good faith there could be no recovery in any event. That instruction, with the one complained of, fully protected the rights of the defendant. The court in effect said that if the editorial was true there was no privilege, but that plaintiff could not recover if defendant acted in good faith. Thus the jury were

informed that both falsity and malice were essential to plaintiff's right to recover.

After charging plaintiff's eleventh request, the court further charged, at the request of the defendant, that the burden was on the plaintiff to prove by a fair preponderance of credible evidence ·that defendant was actuated by actual malice, and that, if the statements of fact contained in the alleged libel "were substantially true, defendant is entitled to a verdict," and further that as matter of law nothing published by the defendant which was true could injure plaintiff, and that if the jury believed that defendant published the article "in good faith, believing same to be true, whether or not the same was actually false, your verdict should be for the defendant," and also that if the defendant's publication was false, and it was actuated by actual malice, the jury should still take into consideration "all the facts establishing some relevant portion of defendant's publication in reduction of an amount of damages which would have otherwise been justified in case of a wholly false and reckless publication." The court also instructed the jury that the burden was on plaintiff of showing that defendant had no probable cause for reflecting on the motive with which the editorial was published in Collier's, and that if defendant had probable cause therefor then the verdict must be for the defendant. These instructions given subsequently to charging plaintiff's eleventh request were most favorable to the defendant, and I think they removed any possible prejudice caused by charging the eleventh request.

Exception was also taken to the charge that evidence received in mitigation, or tending to show good faith in making the publication, cannot mitigate or lessen the compensatory damages which must be awarded to a person who has been libeled, and that evidence in mitigation was relevant only upon the question of punitive damages. In giving these instructions the court was stating general principles of law which would not be strictly accurate in all cases, for in some instances evidence in mitigation bears directly upon the actual damages, known as compensatory, as for instance where such evidence, although not a complete justification, tends to show that the conduct or character of the plaintiff was such that his actual damages would not be as great as they might be presumed to be in the absence of such evidence. Holmes v. Jones, 147 N. Y. 59, 41 N. E. 409, 49 Am. St. Rep. 646; Gressman v. Morning Journal Ass'n, 197 N. Y. 474, 90 N. E. 1131; Kiff v. Youmans, 86 N. Y. 324, 40 Am. Rep. 543; Young v. Fox, 26 App. Div. 261, 49 N. Y. Supp.·634; Dinkelspiel v. N. Y. Evening Journal Co., 91 App. Div. 96, 86 N. Y. Supp. 375; Osterheld v. Star Co., 146 App. Div. 388, 131 N. Y. Supp. 247; Keller v. American Bottlers' Pub. Co., 140 App. Div. 311, 125 N. Y. Supp. 212.

But there was no evidence given in mitigation in the case at bar that had any material bearing upon the question of actual damages. It is claimed that the fact that Collier's provoked the libel had such bearing. The editorial was introduced by plaintiff, and I think that the jury would not understand that it was evidence in mitigation. Moreover, it is not apparent how plaintiff's compensatory damages

·are affected by the fact that Collier's, acting within its rights, published a fair and honest criticism of defendant's methods of advertising. The court left it to the jury to determine whether the defendant pleaded the truth of the article as a defense in good faith, and if they found that it was not so pleaded they were permitted to consider that in awarding damages. Error cannot be assigned on account of the omission of the court to state in this charge that damages could not be awarded if defendant proved the truth in justification, for the jury were elsewhere in the charge instructed that there could be no recovery if the article was true or even substantially true. It was held, in Klinck v. Colby et al., supra, that, where a communication is privileged, a plea of justification, even without proof to sustain it, may not be considered as evidence of malice and in aggravation of damages, for the reason that:

"The jury may not look for the actual malice which shall nullify the privilege, in the fact that the defendant has put upon the record a justification which he has not attempted to sustain."

But in Youmans v. Paine, 86 Hun, 479, 35 N. Y. Supp. 50, which was a case of a privileged communication, the court, citing Marx v. Press Publishing Co., 134 N. Y. 561, 31 N. E. 918, held that the jury had the right to determine as a question of fact whether the justification of the article was set up in good faith. Moreover, the court was here charging, *not with respect to plaintiff's right to recover, but with respect to the amount of damages if he was 'entitled to recover.* The court, by this charge, was merely stating the general proposition sustained by Cruikshank v. Gordon, 118 N. Y. 178, 23 N. E. 457, that a plea of justification in libel, if not made in good faith, may be considered in aggravation of damages. By this charge the jury were not instructed that they might consider the plea as evidence of malice if they found that the article was privileged, for malice had to be found before they reached the question of damages. The court did not err in stating to the jury the general rule of law that the burden is on the defendant to establish a privilege claimed, for, at the request of the appellant, the court charged that the editorial afforded a privileged occasion, which rebutted "any inference which the law would otherwise make that defendant's publication was false and malicious," and that defendant's publication was presumptively privileged; and further that no recovery could be had unless the privilege was abused to such an extent as to show actual malice, which could not be found on the use of intemperate or excessive language or fair and proper criticism of Collier's motive for publishing the editorial. These instructions, if not more favorable to appellant than the law warranted were, at least, extremely favorable to it.

Complaint is also made of the charge in so far as the jury were permitted to consider the publication of the alleged libel in 44 newspapers in the state of New York, and the further extensive circulation of it, as evidence of malice, giving them the right in their discretion to award punitive damages. Every separate publication of a libel gives rise to a cause of action, and therefore each of the 44 publications in New York constituted a separate cause of action. Un-

ion Associated Press v. Heath, 49 App. Div. 247, 63 N. Y. Supp. 96. The complaint embraced only the publications in the county of New York, and the record indicates that the evidence of the other publications was received merely on the question of malice, although it was not expressly so limited either when received or in the charge. The discussion, however, in the presence of the jury on objection to its reception, showed that respondent's counsel only claimed that it was competent on that question. I am of opinion that it was competent evidence, and that the jury were properly instructed that it might be considered on the question of malice *in determining* whether exemplary damages *should be* awarded. The court did not instruct the jury that it could not be considered *on the question of damages,* but no request so to charge was made.

I have now discussed every point presented by the learned counsel for the appellant, and have shown, I think, that, even on the theory on which the case was tried, no error prejudicial to the rights of the appellant is presented for review *by exception,* and that plaintiff was entitled to recover as matter of law, and the only question for determination was the amount of the verdict. If, however, errors were committed, it does not follow that there should be a reversal. Even on the review of a conviction in a criminal case the Legislature has *commanded* that:

"The court must give judgment, without regard to technical errors or defects or to exceptions, which do not affect the substantial rights of the parties."

There is no presumption that an *error* committed on the trial is sufficiently prejudicial to the rights of the appellant to entitle him to a reversal, and he is not entitled to a new trial unless it appears that the error affected the verdict to his prejudice. In Post v. Brooklyn Heights R. R. Co., 195 N. Y. 62, 87 N. E. 771, in reviewing an appeal in a civil case, the Court of Appeals unanimously held as follows:

"There are errors in this record; but we find none calling for reversal, when the circumstances under which the erroneous rulings were made and their probable effect on the result are taken into account. Under our system of appeals every error does not require a new trial, for the vast judicial work of the state could not be done on that basis. Unless the error is so substantial as to raise a presumption of prejudice, it should be disregarded, for undue delay is a denial of justice."

The verdict is large; but I would not say that it is, excessive, for the libel was extremely denunciatory and defamatory. Collier's was rendering a commendable public service. The defendant put its food products on the market and advertised them, and that subjected both products and advertisements to criticism, and for any fair and honest criticism, no matter how severe or extreme, which did not misstate a material fact, the law afforded appellant no redress. Odgers on Libel & Slander (5th Ed.) pp. 194, 216, 217. See, also, Triggs v. Sun Printing & Pub. Co., 179 N. Y. 144, 71 N. E. 739, 66 L. R. A. 612, 103 Am. St. Rep. 841, 1 Ann. Cas. 326; Hoey v. Times Co., 138 App. Div. 149, 122 N. Y. Supp. 978. The attack upon Collier's in the libelous article with respect to the motive for its editorial and

the falsity thereof was without justification, and malice stands out in every sentence of it. The evidence fairly preponderates in favor of the respondent that appellant was guilty of deceptive advertising, and upon all the issues. It may fairly be presumed that the plaintiff was greatly damaged by the injury to his feelings, to his reputation, and to his business, for, if the charges contained in the libel thus extensively published were believed, even by a small percentage of the readers of the libel, the prestige of Collier's would be seriously impaired, and its circulation would be seriously affected, and its proprietors would be greatly humiliated; and in view of the deliberation with which the libel was published, and its venomous character, it presented a case for the award of heavy exemplary damages. It may be that the opening of trial counsel for respondent and the course of the trial, of which complaint is made, were prejudicial to appellant on the question of damages, and that allowance should be made by requiring respondent, as a condition of not granting a new trial, to stipulate for a liberal reduction as is sometimes done; but, since this is to be a minority opinion, I do not deem it necessary to express an opinion on that point.

I therefore vote to affirm.

DOWLING, J., concurs.