GUENTHER v. RIDGWAY CO.

(Supreme Court, Appellate Division, First Department. December 30, 1915.)

1. WITNESSES ☜393—IMPEACHMENT—PRIOR TESTIMONY—MODE OF PROOF— TRANSCRIPT ON APPEAL.

The typewritten record on appeal in another suit of the testimony of a witness was not competent proof of the testimony of such witness to impeach his testimony in the later suit.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1252–1257; Dec. Dig. ☜393.]

2. EVIDENCE ☜473—OPINION.

In an action for libel, testimony of a witness that when he was special district attorney an investigation he made disclosed no evidence that plaintiff was interested in a certain business, other than in handling its advertising, was inadmissible, as the witness' opinion as to whether a thorough investigation conducted by him into the affairs of the business, interviewing witnesses, and conducting a prosecution against one of the members of the company, showed that plaintiff was connected with it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2220–2233; Dec. Dig. ☜473.]

3. LIBEL AND SLANDER ☜7—CHARGE OF BLACKMAILING—LIBELOUS CHARACTER.

A charge that plaintiff was a blackmailer was libelous.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 17–78; Dec. Dig. ☜7.]

4. LIBEL AND SLANDER ☜19—JUSTIFICATION BY TRUTH—"BLACKMAIL."

In an action for libel for having published the charge that plaintiff was a blackmailer, it was error for the court to limit the defense of justification to blackmail as defined by Penal Law (Consol. Laws, c. 40) § 856, relating to a threat in writing, since "blackmail" has a broader meaning than the crime of blackmail, being defined as extortion in any mode by means of intimidation, as the extortion of money by threats of accusation or exposure, or of unfavorable criticism in the press.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 98, 99; Dec. Dig. ☜19.

For other definitions, see Words and Phrases, First and Second Series, Blackmail.]

5. LIBEL AND SLANDER ☜123—JUSTIFICATION—TRUTH—QUESTION FOR JURY.

In an action for libel by having published of plaintiff that he was a blackmailer, whether defendant justified by showing truth of the charge,

in the colloquial sense in which the word is ordinarily used and understood, *held* for the jury under the evidence.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. ☞123.]

Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Louis Guenther against the Ridgway Company. Judgment for plaintiff for $17,000. From the judgment, and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial granted.

See, also, 159 App. Div. 74, 143 N. Y. Supp. 961.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, DOWLING, and SMITH, JJ.

James B. Sheehan, of New York City (Francis Rooney, of New York City, on the brief), for appellant.

E. C. Crowley, of New York City, for respondent.

INGRAHAM, P. J.    The plaintiff was the editor of the Financial World, a weekly periodical having a circulation of 12,000, published in New York by the Guenther Publishing Company, of which he was the president and treasurer and the owner of a majority of its capital stock; and he brought this action to recover damages for an alleged libel in the September, 1911, issue of the Adventure, a monthly periodical published by the defendant.

[1] We are of opinion that it was error to receive a typewritten record on appeal in Kellogg v. United States to impeach the testimony given by the witness Eberman, for the certified case on appeal was not competent proof of the testimony given by the witness on that trial to impeach his testimony given on the trial of the issues herein.

[2] We are also of opinion that it was error to receive the testimony, given by the witness Olcott, to the effect that an investigation which he made as special district attorney did not disclose any evidence that the plaintiff was interested in the business of E. S. Dean & Co., other than in handling its advertising, for the reason that it consisted merely of his opinion as to whether a thorough investigation conducted by him into the affairs of E. S. Dean & Co., consisting of the examination of the books of the company and interviewing witnesses and conducting a prosecution against one of the members of the company, showed that the plaintiff was in any manner connected with the company, otherwise than in handling its advertising.

[3-5] The court ruled, and instructed the jury, that the charge that the plaintiff was a blackmailer was libelous. Those rulings are sustained by the decision of this court in Town Topics Pub. Co. v. Collier, 114 App. Div. 191, 99 N. Y. Supp. 575. Without, so far as the record shows, the point having been taken or claim made by counsel for respondent, the court announced when this question first arose that the only blackmail he knew or would recognize was that defined in the Penal Law of this state, and that position was maintained by the court throughout the trial. The court read section 856 of the Penal Law

to the jury, and ruled that the defense of justification of this charge required proof of blackmail as defined in that section, which relates to a threat in writing, and charged, as matter of law, that the evidence was insufficient to establish this defense. There was no evidence tending to show that the plaintiff had attempted to blackmail advertisers by written threats, but we are of opinion that the court erred in so limiting the proof of justification. It cannot be said, as matter of law, that the libel charged the plaintiff with having committed the *crime* of blackmail. The word "blackmail" has a broader meaning. It is defined in the Century Dictionary as:

"Extortion in any mode by means of intimidation, as the extortion of money by threats of accusation or exposure, or of unfavorable criticism in the press."

Blackmail has frequently been construed by the courts as synonymous with extortion. Edsall v. Brooks, 17 Abb. Pr. 226; People v. Davis, 156 App. Div. 279, 141 N. Y. Supp. 83; Matter of Lenney, 169 App. Div. 509, 155 N. Y. Supp. 473; Mitchell v. Sharon (C. C.) 51 Fed. 424. See, also, Holmes v. Jones, 50 Hun, 345, 3 N. Y. Supp. 156; Hess v. Sparks, 44 Kan. 465, 24 Pac. 979, 21 Am. St. Rep. 300. We are also of opinion that the evidence presented a question of fact for the jury as to whether the appellant justified in the colloquial sense in which the word is ordinarily used and understood.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.

CLARKE, DOWLING, and SMITH, JJ., concur.

LAUGHLIN, J. (dissenting). I agree that the three rulings pointed out in the majority opinion were erroneous; but I am of opinion that due allowance could be made therefor by requiring, as a condition of not granting a new trial, that the plaintiff stipulate a reduction of the verdict.

In the spring of the year 1911 the defendant employed one Simon Herzig, who to its knowledge had adopted the name of George Graham Rice and had served a term in the Elmira Reformatory, another in Auburn State Prison, and another in Sing Sing Prison, and one of the crimes for which he had been convicted, according to an article published by the defendant in another of its magazines on the 22d day of December, 1906, was· forgery, to write a series of articles to be published in Adventure, containing an account of his personal experiences, prior to his conviction, in various lines of sport, finance, business, and travel, including horse racing, mining, and prize fighting in mining camps, and it paid him from $500 to $1,000 for each article. The articles were published under the general heading "My Adventures with Your Money." The article containing the alleged libel was the sixth of the series, and its subheading was, "Raw Hide and Wall Street; the Press Agent and the Public's Money." The part of the article constituting the alleged libel was entitled, "The Power of the Public Print." It was stipulated that the circulation of the September, 1911, issue of Adventure

was 117,000. It does not appear when the manuscript for this article was written, but it was delivered to the defendant some time in the month of May, 1911, and the September issue in which it appeared came out in August thereafter.

The article which the defendant thus hired Rice to write, and which it published, was clearly libelous per se, in that, among other things, it charged him with being a blackmailer. Town Topics Pub. Co. v. Collier, 114 App. Div. 191, 99 N. Y. Supp. 575. The libelous charges against plaintiff for the most part related to matters which had occurred many years before. The Financial World, of which plaintiff was the editor, had been for years conducting a campaign against fraudulent so-called "Get Rich Quick" enterprises, in which the public had been induced, and were being induced, to invest, and in some of which Rice had been active, and the Financial World had exposed him and his criminal record. Rice made no attempt in the libelous article to defend himself against such attacks, but merely libeled the plaintiff with respect to other matters in no manner related to or connected with the attacks of the Financial World upon him, and therefore neither Rice nor the defendant was privileged in publishing any part of the libelous article. Odgers on Libel and Slander (5th Ed.) p. 292; Collier v. Postum Cereal Co., Ltd., 149 App. Div. 143, 133 N. Y. Supp. 852, on motion for reargument 150 App. Div. 169, 134 N. Y. Supp. 847. Moreover, Rice was not called as a witness, and it does not appear how long a time elapsed between the last attack upon him and the time he wrote the libel, and the burden was on defendant of showing this, if it claimed that the libel was provoked by the attacks and that sufficient time had not elapsed to destroy the privilege of making a counter attack *in connection with a defense* against the attacks made in the Financial World, and in the absence of such evidence proof of the attacks upon Rice were inadmissible as bearing upon either compensating or punitive damages. Beardsley v. Maynard, 4 Wend. 336; Klaw v. New York Press Co., Ltd., 144 App. Div. 501, 129 N. Y. Supp. 224.

The learned trial court on a fair and impartial charge left all evidence bearing upon plaintiff's character to the jury, with instructions to consider it in determining the amount of compensatory damages; and the court received all competent evidence offered by defendant in its attempt to justify the charge that plaintiff was a blackmailer. The jury thus had before them the conduct of the plaintiff, which defendant claimed tended to show blackmail in the colloquial sense.

The mere fact that the court erroneously ruled and charged that the libel could not be justified, so as to exonerate defendant from all liability on account of the charge of blackmail, without proof of a written threat, did not, I think, result in any material increase in the verdict which counsel for appellant argues for the most part represents punitive damages, and that is indicated by questions asked by jurors with respect to why the defendant, which was claiming to stand in the shoes of Rice, for the purpose of being accorded the privilege which the law gave him to defend himself against attacks, did not call Rice, and whether it refrained from calling him on account of

his criminal record. Regardless of any question with respect to plaintiff's character in former years, the case is one, on the facts I have narrated, in which heavy punitive damages should be awarded.

The testimony of Olcott was corroborative of that given by the plaintiff, and it bore only on the question as to whether plaintiff's connection, many years before, with a firm, certain members of which had been prosecuted for swindling operations, was merely in handling their advertising, which he admitted, or whether it extended to a ten per centum interest in the profits as the testimony of one witness for defendant tended to show which plaintiff denied.

The erroneous admission of the certified transcript of a few lines of testimony to contradict a witness was not, I think, seriously prejudicial.

I therefore vote for affirmance.